UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

In re:

                                                          Chapter 11

VICTORIA TEODORESCU,                                      Case No. 14-23450 (RDD)

                        Debtor.

----------------------------------------------------------X

---

**DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN.
ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THE DISCLOSURE
STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THE DISCLOSURE
STATEMENT IS BEING SUBMITTED FOR CONDITIONAL APPROVAL TO THE
BANKRUPTCY COURT BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY
COURT AT THIS TIME.  THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED
UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT
THAT THIS DISCLOSURE STATEMENT CONTAINS "ADEQUATE INFORMATION" WITHIN
THE MEANING OF BANKRUPTCY CODE §1125.**

TODD S. CUSHNER
GARVEY TIRELLI & CUSHNER LTD.
50 MAIN STREET
SUITE 390
WHITE PLAINS, NY 10606
914-946-2200
FAX : 914-946-1300
EMAIL: TODD@THEGTCFIRM.COM

Dated: As of July 29, 2016

## <u>IMPORTANT DATES:</u>

- Voting Deadline by which Ballots must be received: _____, at 4:00 p.m. (prevailing Eastern Time)

- Deadline by which to file and serve objections to Confirmation of the Plan: _____, at 4:00 p.m. (prevailing Eastern Time)

- Hearing on Confirmation of the Plan: _____ at 10:00 a.m. (prevailing E.S.T.)

THE DEBTOR (AS VOTING AGENT) MUST <u>ACTUALLY RECEIVE</u> YOUR BALLOT ON OR BEFORE THE ABOVE STATED VOTING DEADLINE.

THE DEBTOR CANNOT PROVIDE ANY ASSURANCE THAT THE DISCLOSURE STATEMENT (AND THE EXHIBITS) ULTIMATELY APPROVED IN THE CHAPTER 11 CASE (A) WILL CONTAIN ANY OF THE TERMS IN THIS CURRENT DOCUMENT, OR (B) WILL NOT CONTAIN DIFFERENT, ADDITIONAL, MATERIAL TERMS THAT DO NOT APPEAR IN THIS DOCUMENT.

# TABLE OF CONTENTS

Page

| | | | |
|---|---|---|---|
| A. | PURPOSE AND EFFECT OF THE PLAN | | 5 |
| B. | PRE-PETITION BACKGROUND | | 5 |
| C. | OVERVIEW OF CHAPTER 11 | | 5 |
| D. | CONFIRMATION AND CONSUMMATION OF THE PLAN | | 6 |
| E. | RISK FACTORS | | 6 |
| II. | BACKGROUND OF CHAPTER 11 CASE | | 7 |
| A. | BANKRUPTCY PETITION | | 7 |
| B. | MOTIONS AND ORDERS | | 7 |
| C. | NO APPOINTMENT OF A CREDITORS' COMMITTEE | | 7 |
| D. | CLAIMS PROCESS AND CLAIMS BAR DATE | | 8 |
| E. | SALE PROCESS | | 8 |
| IV. | SUMMARY OF PLAN | | 9 |
| A. | ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS | | 9 |
| B. | CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS | | 10 |
| C. | ACCEPTANCE OR REJECTION OF THE PLAN | | 12 |
| D. | MEANS FOR IMPLEMENTATION OF THE PLAN | | 13 |
| E. | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | | 14 |
| F. | PROVISIONS GOVERNING DISTRIBUTIONS | | 15 |
| G. | PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS OR INTERESTS | | 18 |
| H. | CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN | | 20 |
| I. | SETTLEMENT, INJUNCTION, AND RELATED PROVISIONS | | 21 |
| J. | RETENTION OF JURISDICTION | | 24 |
| K. | MISCELLANEOUS PROVISIONS | | 25 |
| V. | SOLICITATION AND VOTING PROCEDURES | | 28 |
| A. | RECORD DATE | | 28 |
| B. | VOTING DEADLINE | | 28 |
| C. | SOLICITATION PROCEDURES | | 29 |
| D. | VOTING AND TABULATION PROCEDURES | | 29 |
| VI. | CONFIRMATION PROCEDURES | | 30 |
| A. | CONFIRMATION HEARING | | 30 |
| B. | STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN | | 31 |
| C. | RISK FACTORS | | 34 |
| D. | CONTACT FOR MORE INFORMATION | | 34 |

VII.    PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND
        CONSUMMATION OF THE PLAN .......................................................................... 34

        A.    GENERAL BANKRUPTCY LAW AND PLAN-RELATED
              CONSIDERATIONS ................................................................. 35
        B.    RISKS ASSOCIATED WITH FORWARD LOOKING STATEMENTS ................... 36
        C.    DISCLOSURE STATEMENT DISCLAIMER .............................................. 36
        D.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE
              PLAN ....................................................................................... 38

VIII.   CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ......................... 38

IX.     CONCLUSION AND RECOMMENDATION ......................................................... 39

**THE BANKRUPTCY COURT'S CONDITIONAL APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE FINAL BANKRUPTCY COURT APPROVAL OR THE BANKRUPTCY COURT'S RECOMMENDATION ON THE MERITS OF THE DEBTOR'S PLAN OF REORGANIZATION.**

## INTRODUCTION AND GENERAL BACKGROUND[1]

On October 14, 2014, Victoria Teodorescu (the "Debtor") filed a voluntary petition for relief (the "Chapter 11 Case") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), under chapter 11 of title 11, United States Code (the "Bankruptcy Code").  The Debtor submits this Disclosure Statement pursuant to Bankruptcy Code §1125, to Holders of Claims in connection with: (a) the solicitation of votes to accept or reject the *Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, as the same may be amended from time to time (the "Plan"), and (b) the Final Hearing to Approve the Disclosure Statement and confirm the Plan, which is scheduled for _____, at 10:00 a.m. (prevailing E.S.T.) (the "Confirmation Hearing").  A copy of the Plan is annexed hereto as Exhibit "A" and incorporated herein by reference.

The purpose of this Disclosure Statement is to set forth information (a) regarding the Debtor and the Chapter 11 Case, (b) concerning the Plan and alternatives to the Plan, (c) advising the Holders of Claims of their rights under the Plan, and (d) assisting the Holders of Claims in making an informed judgment regarding whether they should vote to accept or reject the Plan.

By order entered _____, 2016 (the "Disclosure Statement Order"), the Bankruptcy Court conditionally approved this Disclosure Statement, in accordance with Bankruptcy Code §1125, as containing "adequate information" to enable a hypothetical, reasonable creditor or investor typical of Holders of Claims against the Debtor to make an informed judgment as to whether to accept or reject the Plan, and authorized its use in connection with the solicitation of votes with respect to the Plan.

The Disclosure Statement Order sets forth in detail the deadlines, procedures and instructions for voting to accept or reject the Plan, and for filing objections to confirmation of the Plan, the Record Date for voting purposes, and the applicable standards for tabulating Ballots. In addition, detailed voting instructions accompany each Ballot.  Each Holder of a Claim entitled to vote on the Plan should read this Disclosure Statement and all Exhibits hereto including the Plan, the Disclosure Statement Order, and the instructions accompanying the Ballot in their entirety before voting on the Plan.  These documents contain important information concerning the classification of Claims and Interests for voting purposes and the tabulation of votes. CONDITIONAL APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.  No solicitation of votes may be made except pursuant to this Disclosure Statement and Bankruptcy Code §1125.  In voting on the Plan, Holders of Claims and Interests should not rely on any information relating to the Debtor, other than that contained in this Disclosure Statement, the Plan, and all exhibits and appendices hereto and thereto.

The Debtor may file a plan supplement (the "Plan Supplement") containing certain documents relating to the Plan. The Plan Supplement may be filed as early as practicable but in

---

[1] All capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan.

no event less than 10 days prior to the Confirmation Hearing, or on such other date as may be established by the Bankruptcy Court.  Parties may obtain a copy of the Plan and Plan Supplement (i) from counsel to the Debtor, or (ii) for a fee via PACER at http://www.nysb.uscourts.gov/.

THE DEBTOR BELIEVES THAT THE PLAN PROVIDES FOR THE BEST AVAILABLE RECOVERY TO HER CREDITORS.  THE DEBTOR RECOMMENDS THAT HOLDERS OF CLAIMS IN CLASS 4 (GENERAL UNSECURED CLAIMS) VOTE TO ACCEPT THE PLAN.

THE DEBTOR IS PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE PLAN.  NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE.

A GLOSSARY OF DEFINED TERMS UTILIZED IN THE PLAN AND DISCLOSURE STATEMENT IS SET FORTH IN ARTICLE I.B. OF THE PLAN.

NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT.  THE DEBTOR URGES EACH HOLDER OF A CLAIM TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHERMORE, THE BANKRUPTCY COURT'S CONDITIONAL APPROVAL OF THE ADEQUACY OF DISCLOSURE CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.

IT IS THE DEBTOR'S POSITION THAT THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION OR WAIVER.  RATHER, HOLDERS OF CLAIMS AND INTERESTS AND OTHER ENTITIES SHOULD CONSTRUE THIS DISCLOSURE STATEMENT AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT.  THE DEBTOR OR THE POST-CONFIRMATION DEBTOR MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN WHETHER OR NOT THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTOR'S CHAPTER 11 CASE AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE. ALTHOUGH THE DEBTOR BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS.  IN THE EVENT OF

ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES.

THE DEBTOR HAS REVIEWED THE FINANCIAL AND CLAIM INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT.  ALTHOUGH SHE HAS USED HER REASONABLE BUSINESS JUDGMENT TO ENSURE THE ACCURACY OF THIS INFORMATION, THE FINANCIAL AND CLAIM INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED.

THE DEBTOR IS MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTOR MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTOR HAS NO AFFIRMATIVE DUTY TO DO SO. HOLDERS OF CLAIMS AND INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE DISCLOSURE STATEMENT WAS FILED.  HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE DEBTOR AND THEIR OWN ANALYSES OF THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, ANY RISK FACTORS CITED HEREIN, IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.

THE DEBTOR HAS NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT.   THE DEBTOR HAS NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTOR OR THE VALUE OF THE REAL PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL IN SECTION VII HEREIN, "PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN."

ALL EXHIBITS TO THIS DISCLOSURE STATEMENT ARE INCORPORATED INTO AND MADE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

A.     PURPOSE AND EFFECT OF THE PLAN

The Plan provides for the Sale of the Real Property, which has already been approved by the Bankruptcy Court.  The proceeds of the Sale, which are included in the Plan Funds, will be used to make all distributions pursuant to the terms of the Plan.

B.     PRE-PETITION BACKGROUND

The Debtor is an individual that resides at a rental home located at 50 Park Lane, West Harrison NY.  The Debtor is a Vascular Surgeon currently employed by a NYC Hospital.  The Debtor was involved in a long standing and contentious divorce from her husband.  The Debtor's

husband was a celebrity fitness guru and had incurred significant joint debt primarily in the form of real property, which had been acquired during the marriage. The Debtor's husband was involved in a complex bankruptcy in which his debts were not discharged.

The Debtor and her ex-husband jointly own two (2) parcels of real property. The first property is the former marital residence, which is located at 39 Penny Lane in Scarsdale New York (the "Scarsdale Property"). This property is encumbered by three (3) mortgages. The Debtor intends to surrender the Scarsdale Property in full satisfaction of all debts owed on it.

The second property is located at 7 Buckskill Road in the Town of East Hampton, New York (the "Hamptons Property "). The Hamptons Property is encumbered by three (3) mortgages and is the property being sold under the Plan. The Debtor filed for bankruptcy relief to eliminate her obligations under those mortgages.

C.    OVERVIEW OF CHAPTER 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code, although individuals may also file under chapter 11. In addition to permitting debtor rehabilitation, chapter 11 promotes equality of treatment for similarly situated creditors and similarly situated interest holders, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the bankruptcy petition date. Consummating a plan is the principal objective of a chapter 11 case. The Bankruptcy Court's confirmation of a plan binds the debtor, any person acquiring property under the plan, any creditor or interest holder of a debtor, and any other person or entity as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code. Subject to certain limited exceptions, the order issued by the Bankruptcy Court confirming a plan provides for the treatment of the debtor's liabilities in accordance with the terms of the confirmed plan.

Prior to soliciting acceptances of a proposed chapter 11 plan, Bankruptcy Code §1125 requires a debtor to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable creditor or investor to make an informed judgment regarding acceptance of the chapter 11 plan. This Disclosure Statement is being submitted in accordance with the requirements of Bankruptcy Code §1125.

D.    CONFIRMATION AND CONSUMMATION OF THE PLAN

It will be a condition to Confirmation of the Plan that all provisions, terms and conditions of the Plan are approved in the Confirmation Order unless otherwise satisfied or waived pursuant to the provisions of Article IX of the Plan. The Sale will be conducted by the Debtor, and the Plan will be consummated after, among other things, the closing of the Sale on or shortly after the Effective Date.

E.    RISK FACTORS

PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN SECTION IX HEREIN ENTITLED, "PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN."

## II.    BACKGROUND OF CHAPTER 11 CASE

A.    BANKRUPTCY PETITION

On October 14, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

B.    MOTIONS AND ORDERS

During the Chapter 11 Case, the Debtor filed additional motions and applications.

1.    Retention of Garvey Tirelli & Cushner Ltd.

On October 14, 2014, the Debtor filed an *Application to Employ Garvey Tirelli & Cushner Ltd. as Counsel to Debtor and Debtor in Possession* (ECF Doc. No. 7 (the "Garvey Tirelli & Cushner Ltd. Retention Application"). On July 25, 2016, the Court entered an order granting the Garvey Tirelli & Cushner Ltd. Retention Application, Nunc Pro Tunc (ECF Doc. No. 51

2.    Retention of Real Estate Broker

On May 12, 2016, the Debtor filed an *Application to Employ Sotheby's International Realty Inc., John Healy as Real Estate Broker* (ECF Doc. No. 40) (the "Broker Retention Application"). On June 21, 2016, the Court entered an order granting the Broker Retention Application (ECF Doc. No. 46).

Sotheby's International Realty Inc. (the "Broker") will be paid from the proceeds of the Sale, subject to a properly noticed application and approval by the Bankruptcy Court.

3.    Motion to Set Last Day to File Proofs of Claim

On January 30, 2015, the Debtor filed a motion seeking entry of an order establishing deadlines and procedures for filing proofs of claim, and approving the Debtor's proposed forms and manner of notice of the proposed deadlines (ECF Doc. No. 18) (the "Bar Date Motion"). On March 2, 2015, the Court entered an Order approving the Bar Date Motion (ECF Doc. No. 20). Pursuant to the Order approving the Bar Date Motion, the General Bar Date is April 8, 2015 and the Governmental Bar Date is April 13, 2015.

4.    Motion to Approve Sale and Related Bid Procedures

On May 12, 2016, the Debtor filed the *Debtor's Motion to Sell Property Free and Clear of Liens Under Bankruptcy Code Section 363* (ECF Doc. No. 39) (the "Sale Motion"). Among other things, the Sale Motion sought to approve the Debtor's proposed terms and conditions with respect to the Sale, and approve the proposed Sale Procedures. On June 20, 2016, the Court entered an order granting the Sale Motion (ECF Doc. No. 45).

C.    NO APPOINTMENT OF A CREDITORS' COMMITTEE

To date, the Office of the United States Trustee for Region 2 has not appointed an unsecured creditors' committee in the Chapter 11 Case.

D.      CLAIMS PROCESS AND CLAIMS BAR DATE

In chapter 11, claims against a debtor are established either as a result of being listed in a debtor's schedules of assets and liabilities or through assertion by a creditor in a timely filed proof of claim. Claims asserted by a creditor are either allowed or disallowed. If allowed, a claim would be recognized and treated pursuant to a plan; if disallowed, a creditor would have no right to obtain any recovery on or otherwise enforce the claim against the debtor.

1.      Section 341(a) Meeting of Creditors

On November 12, 2014, the United States Trustee conducted the Section 341(a) Meeting of Creditors in the Chapter 11 Case.

2.      Schedules and Statements

On the Petition Date, the Debtor filed with the Bankruptcy Court her Statement of Financial Affairs, Schedules of Assets and Liabilities, Schedule of Executory Contracts and Unexpired Leases, and Lists of Creditors (ECF Doc. Nos. 1) (the "Schedules").

As part of the Schedules, the Debtor has claimed various exemptions in her personal property, pursuant to New York Civil Practice Law and Rules ("CPLR") §5205, including exemptions in her cash, bank accounts, security deposits, household goods, collectables, wearing apparel, jewelry, and under NY Ins. Law section 3212, her 403B retirement plan.

Copies of the Schedules are available with the Clerk of the Bankruptcy Court. The Debtor reserves the right to amend the Schedules during the Chapter 11 Case.

3.      General and Governmental Bar Dates

By Order dated March 2, 2015 (ECF Doc. No. 20), the Bankruptcy Court established April 8, 2015, as the bar date for filing proofs of claim against the Debtor, and April 13, 2015 as the deadline for filing a proof of claim by a governmental unit (as defined by Bankruptcy Code §101(27)).

E.      SALE PROCESS

During the pendency of the Chapter 11 Case, the Debtor, through the Broker, engaged in an active marketing campaign beginning in or around January 2016 to solicit and negotiate offers for the sale of the Real Property. Those marketing efforts resulted in the highest and best offer being submitted by the Plan Funder. On May 12, 2016, the Debtor filed a motion seeking approval of the sale of the Real Property to the Plan Funder, which was approved by order of the Bankruptcy Court dated June 20, 2016. The Debtor intends that the closing of the Sale will be held after confirmation of the Plan.

### III.    SUMMARY OF PLAN[2]

A.    ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

    1.    Administrative Claims

        (a)    General Administrative Claims

Except as otherwise provided in the Plan and subject to Bankruptcy Code §§328, 330(a) and 331, each Holder of an Allowed General Administrative Claim will be paid the full amount of such Allowed Claim in Cash: (a) on or as soon as reasonably practicable after the Effective Date; (b) if such Claim is Allowed after the Effective Date, on or as soon as practicable after the date such Claim is Allowed; (c) upon such other terms as may be agreed upon by such Holder and the Debtor; or (d) as otherwise ordered by the Bankruptcy Court.

Except as otherwise provided in the Plan, unless previously Filed, requests for payment of General Administrative Claims must be Filed and served prior to the General Administrative Claims Bar Date. Holders of General Administrative Claims that do not File and serve such a request by the applicable General Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such General Administrative Claims against the Debtor, her Estate and such General Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the Debtor and the requesting party within 30 days after the General Administrative Claims Bar Date.

        (b)    Fee Claims

Retained Professionals, including without limitation other entities asserting a Fee Claim for services rendered before the Confirmation Date, must File and serve on the Debtor, the United States Trustee, the Bank and such other Entities who are designated by the Bankruptcy Rules or any order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than sixty (60) days after the Confirmation Date. Objections to any Fee Claim must be Filed and served on the Debtor, the United States Trustee, and the requesting party in accordance with the notice of the hearing on such Fee Claim.

The Debtor estimates that the aggregate amount of unpaid Fee Claims that will be required to be paid on or after the Effective Date by the Post-Confirmation Debtor will be approximately $40,000.00.

    2.    Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the Debtor and such Holder; provided, however, that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtor, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in

---

[2] The following summary is qualified in its entirety by reference to the Plan. In the event of any inconsistency between the summary provided herein and the Plan, the Plan shall control in all respects.

installment payments over a period not more than five (5) years after the Petition Date, pursuant to Bankruptcy Code §1129(a)(9)(C).

### 3. Fees Payable to the United States Trustee

The Debtor shall pay all United States Trustee quarterly fees under 28 U.S.C. §1930(a)(6), plus interest due and payable under 31 U.S.C. §3717, on all disbursements including Plan payments and disbursements in and outside the ordinary course of the Debtor's business, until the entry of a Final Order closing the Chapter 11 Case, dismissal of the Chapter 11 Case, or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

## B. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

### 1. Administrative Claims and Priority Tax Claims

In accordance with Bankruptcy Code §1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

### 2. Summary of Classification and Treatment of Classified Claims and Interests

The categories of Claims listed below classify Claims for all purposes, including voting, Confirmation and distributions pursuant hereto and pursuant to Bankruptcy Code §§1122 and 1123(a)(1). The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim or an Interest is in a particular Class only to the extent that any such Claim is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

The classification and treatment of Claims and Interests against the Debtor pursuant to the Plan, is as follows:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Priority (Non-Tax) Claims | Unimpaired | Deemed to Accept |
| 2 | Scarsdale Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Hampton Secured Claims | Unimpaired | Deemed to Accept |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Interests | Unimpaired | Deemed to Accept |

### 3. Classification and Treatment of Claims Against the Debtor

Class 1 - Priority (Non-Tax) Claims

> (i)    Classification: Class 1 consists of all Priority Claims against the Debtor which are not tax claims, including real estate, water, sewer and similar claims with respect to the Real Property.

(ii)     Treatment: The legal, equitable and contractual rights of the Holders of Allowed Class 1 Claims are unaltered.  Unless otherwise agreed to by Holders of Allowed Class 1 Claims and the Debtor, each Holder of an Allowed Class 1 Claim shall receive, in full and final satisfaction of such Allowed Class 1 Claim, payment of the Allowed Class 1 Claim in full in Cash on or as soon as reasonably practicable after the Effective Date.

(iii)    Voting: Class 1 is Unimpaired, and Holders of Class 1 Claims are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f).  Therefore, Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan; provided, however, that all Class 1 Claims shall be subject to becoming Allowed Claims under the provisions of the Plan.

Class 2 – Scarsdale Secured Claims

(i)      Classification: Class 2 consists of the Scarsdale Secured Claims.

(ii)     Treatment: Upon the Effective Date the Debtor shall surrender the Scarsdale Property to the Holders of the Scarsdale Secured Claims in full satisfaction of the Scarsdale Secured Claims.

(iii)    Voting: Class 2 is Unimpaired, and Holders of Class 2 Claims are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f).  Therefore, Holders of Class 2 Claims are not entitled to vote to accept or reject the Plan; provided, however, that all Class 2 Claims shall be subject to becoming Allowed Claims under the provisions of the Plan.

Class 3 – Hampton Secured Claims

(i)      Classification: Class 3 consists of the Hampton Secured Claims.

(ii)     Treatment: Any Allowed Class 3 Claim shall be paid in full as soon as such Disputed Class 3 Claim shall become Allowed accordance with Bankruptcy Code §1124(1).  Upon a determination of the Allowed amount of the Class 2 Claim by the Bankruptcy Court, or by agreement between such Holder and the Debtor, the Allowed Class 3 Claim shall be paid in full, in Cash.  If the Allowed amount of such Class 3 Claim has been fixed as of the Effective Date, such Allowed Class 3 Claim shall be paid in full, in Cash, on or as soon as reasonably practicable after the Effective Date.  If the Allowed amount of such Class 3 Claim is fixed after the Effective Date, such Allowed Class 3 Claim shall be paid in full, in Cash, within (20) days after becoming an Allowed Claim.

(iii)    Voting: Class 3 is Unimpaired, and the Holder of the Class 3 Claim is conclusively presumed to have accepted the Plan

-11-

pursuant to Bankruptcy Code §1126(f). Therefore, the Holder of the Class 3 Claim is not entitled to vote to accept or reject the Plan; provided, however, that the Class 3 Claim shall be subject to becoming an Allowed Claim under the provisions of the Plan.

### Class 4 - General Unsecured Claims

(i)     Classification: Class 4 consists of all General Unsecured Claims held against the Debtor.

(ii)    Treatment: Holders of Allowed General Unsecured Claims will receive, in full and final satisfaction, settlement, and discharge and in exchange for each Allowed General Unsecured Claim, their Pro Rata share of the amounts remaining in the Plan Fund.

(iii)   Voting: Class 4 is Impaired and, therefore, Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

### Class 5 – Interests of the Debtor in Property of the Estate

(i)     Classification: Class 5 consists of all of the Debtor's Interests in property of the Estate.

(ii)    Treatment: The Debtor does not have any non-exempt assets and, therefore, shall retain all of her assets not otherwise administered under the Plan.

(iii)   Voting: Class 5 is Unimpaired, and the Holder of Class 5 Interests is not entitled to vote to accept or reject the Plan.

4.     Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing in the Plan shall affect the Debtor's rights with respect to any Unimpaired Claims, including all rights with respect to legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

C.    ACCEPTANCE OR REJECTION OF THE PLAN

1.     Presumed Acceptance of Plan

Classes 1, 2, 3, and 5 are Unimpaired under the Plan and, therefore, are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f).

2.     Voting Class

Class 4 is Impaired under the Plan, and Holders of Class 4 Claims as of the Record Date shall be entitled to vote to accept or reject the Plan.

3.     Acceptance by Impaired Classes of Claims

Pursuant to Bankruptcy Code §1126(c), and except as otherwise provided in Bankruptcy Code §1126(e), an Impaired Class of Claims entitled to vote to accept or reject the Plan has

accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

D.      MEANS FOR IMPLEMENTATION OF THE PLAN

        1.      Source of Funds

        The payments due under the Plan will be paid from the Plan Fund, which will be funded by the (i) Plan Funder, (ii) Sale of the Real Property, and (iii) Disposable Income.

        The Plan Funder:  The Plan Funder has agreed to make a contribution to the Plan in the amount of $225,000.

        The Sale of the Real Property:  The Debtor, through Sotheby's International Realty, engaged in an active marketing campaign beginning in or around January 2016 to solicit and negotiate offers for the sale of the Real Property.  Those marketing efforts resulted in the highest and best offer being submitted by the Plan Funder.  On May 12, 2016, the Debtor filed a motion seeking approval of the sale of the Real Property to the Plan Funder, which was approved by order of the Bankruptcy Court dated June 20, 2016.

        The Disposable Income:  Pursuant to Section 1115(a) of the Bankruptcy Code, the Debtor is committing all of her disposable income to the Plan.

        2.      Release of Liens and Claims

        Except as otherwise provided herein or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Sale or the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, including, but not limited to, the Class 2 Claim or Class 3 Claim, or other security interests against the property of any Estate, including but not limited to the Real Property and the Scarsdale Property, shall be fully released and discharged.

        3.      Exemption from Certain Transfer Taxes

        Pursuant to Bankruptcy Code §1146(a), the sale of the Real Property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States.  The appropriate state or local governmental officials or agents are directed to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of the Real Property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to: (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; or (3) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with the sale of the Real Property pursuant to the Plan.

E.      TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

1.      Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed assumed in accordance with the provisions of Bankruptcy Code §§ 365 and 1123 of the Bankruptcy Code as of the Effective Date, and there are no cure costs associated with such assumption.  However, any such Executory Contract or Unexpired Lease shall not be deemed assumed on the Effective Date if it:

(a)     has previously been assumed by the Debtor by Final Order of the Bankruptcy Court;

(b)     has been assumed by the Debtor by order of the Bankruptcy Court as of the Effective Date which order becomes a Final Order after the Effective Date;

(c)     is the subject of a motion to assume or reject pending as of the Effective Date; or

(d)     is otherwise assumed pursuant to the terms herein.

2.      Claims Based on Rejection of Executory Contracts or Unexpired Leases

Notwithstanding anything to the contrary provided in the Plan, all Proofs of Claim arising from the rejection (if any) of Executory Contracts or Unexpired Leases must be Filed within the later of: (a) 30 days after the entry of an order of the Bankruptcy Court approving any such rejection; and (b) the first Business Day that is 30 days following the Effective Date.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claim are not timely Filed will be forever barred from assertion against the Debtor, her Estate and property of the Post-Confirmation Debtor, unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan.  All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in the Plan.

Notwithstanding anything in the Plan to the contrary, nothing in this Disclosure Statement or the Plan is intended to extend the deadline by which Proofs of Claim arising from the rejection (if any) of Executory Contracts or Unexpired Leases was required to be previously Filed.

3.      Modifications, Amendments, Restatements or Other Agreements

Unless otherwise provided by the Plan, each rejected Executory Contract or Unexpired Lease shall include all modifications, amendments, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interest.

Amendments, restatements or other modifications to Executory Contracts or Unexpired Leases executed by the Debtor during the pendency of the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claim arising in connection therewith.

-14-

4.      Reservation of Rights

Nothing contained in the Plan or the exhibits to the Plan shall constitute an admission by the Debtor that any such contract or lease is an Executory Contract or Unexpired Lease or that the Debtor or the Post-Confirmation Debtor has any liability thereunder. Additionally, the Debtor and Post-Confirmation Debtor reserve all of their defenses and rights with respect to any rejection damages claims filed by an Entity with respect to an Executory Contract or Unexpired Lease.

F.      PROVISIONS GOVERNING DISTRIBUTIONS

1.      Distributions for Allowed Claims

Except as otherwise provided in the Plan or as may be ordered by the Bankruptcy Court, and subject to the establishment of a Disputed Claims Reserve, all distributions with respect to Claims that are Allowed Claims as of the Effective Date shall be made by the Post-Confirmation Debtor, or her counsel, as set forth in the Plan. The Post-Confirmation Debtor shall make distributions on the Effective Date or as soon as reasonably practicable thereafter to Holders of Allowed Administrative Claims, Fees of the type described in 28 U.S.C. § 1930(a)(6), including the fees of the United States Trustee, and any applicable interest, Allowed Fee Claims, and all Allowed Claims and Interests in Classes 1, 2, 3, and 4.  The Post-Confirmation Debtor, or her counsel, shall make further distributions to Holders of Claims that subsequently become Allowed Claims pursuant to the Plan.

2.      Distributions on Account of Claims Allowed After the Effective Date

        (a)      Payments and Distributions on Disputed Claims

Notwithstanding any provision in the Plan to the contrary, except as otherwise agreed by the Post-Confirmation Debtor, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of any such disputes by settlement or Final Order. On the first Business Day which is 20 calendar days after the end of the calendar quarter in which a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim will receive such payments and distributions to which that Holder is then entitled under the Plan.  In the event Claims require adjudication or other resolution, the Post-Confirmation Debtor reserves the right to, or shall upon an order of the Bankruptcy Court, establish appropriate reserves for potential payment of any such Claims.

        (b)      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

3.      Delivery and Distributions and Undeliverable or Unclaimed Distributions

        (a)      Delivery of Distributions in General

Except as otherwise provided in the Plan, the Post-Confirmation Debtor, or her counsel, shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's books and records as of the date of any such distribution; provided,

-15-

*however*, that if such Holder Files a Proof of Claim, the address identified by the Proof of Claim shall be the address for such distribution, and the manner of delivery for such distributions shall be determined at the discretion of the Post-Confirmation Debtor. Nothing in the Plan shall require or be deemed to require the Post-Confirmation Debtor to attempt to locate any Holder of an Allowed Claim. Distributions shall be made in accordance with the provisions of the Plan and may be made in one or more payments or deliveries.

(b)     Minimum Distributions

Notwithstanding anything in the Plan to the contrary, and unless the Net Sale Proceeds are sufficient to pay Class 4 Claims in full, the Post-Confirmation Debtor shall not be required to make distributions or payments of less than $25.00, and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar, with half dollars or less being rounded down. Any Holder of an Allowed Claim whose aggregate distribution under this Plan is less than $25.00 shall forfeit, at the option of the Post-Confirmation Debtor, such amount to, and such amount shall vest in, the Post-Confirmation Debtor for distribution in accordance with the terms of the Plan.

In the event that (a) all Allowed Claims, including Administrative Claims, have been paid in full, or (b) only *de minimis* assets remain in the Post-Confirmation Estate, all undeliverable distributions or Unclaimed Property shall revert to the Post-Confirmation Debtor.

(c)     Undeliverable Distributions and Unclaimed Property

Subject to Bankruptcy Rule 9010, and except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made by the Post-Confirmation Debtor, or her counsel, at (a) the address for each Holder of an Allowed Claim as set forth in the Schedules, unless superseded by the address set forth on the Proof of Claim filed by such Holder, or (b) the last known address for such Holder if no proof of Claim is filed, or if the Debtor or the Post-Confirmation Debtor, has been notified in writing of a change of address.

If any distribution is returned as undeliverable, the Post-Confirmation Debtor may, in her sole discretion, make such efforts to determine the current address of the Holder of the Claim with respect to which the distribution was made, but no distributions to any Holder of an Allowed Claim will be made until the Post-Confirmation Debtor has determined the current address of the Holder of such Allowed Claim, at which time the distribution will be made without interest. The Post-Confirmation Debtor shall have the discretion to determine how to make distributions in the most efficient and cost-effective manner.

Amounts in respect of any undeliverable distributions made by the Post-Confirmation Debtor shall be returned to, and held in trust by, the Post-Confirmation Debtor, until the distributions are claimed, or are deemed to be Unclaimed Property upon the expiration of six (6) months from the date of the return of the undeliverable distribution. Unclaimed Property shall be utilized by the Post-Confirmation Debtor to make additional distributions in accordance with the provisions of the Plan. After the final distribution is made under the Plan, or after all Allowed Claims (including Allowed Administrative Claims) have been paid in full, with interest, any Unclaimed Property shall revert to the Post-Confirmation Debtor.

4.      Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Post-Confirmation Debtor shall comply with all tax withholding and reporting requirements imposed upon it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Post-Confirmation Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including segregating or reserving a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding or other taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Post-Confirmation Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.  For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

5.      Timing and Calculation of Amounts to Be Distributed

Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive, in one or more payments or deliveries, the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in the Plan.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

6.      Setoffs

The Post-Confirmation Debtor may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Post-Confirmation Debtor may hold against the Holder of any such Allowed Claim.  In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Post-Confirmation Debtor may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Post-Confirmation Debtor may, pursuant to Bankruptcy Code §553 or applicable non-bankruptcy law, setoff or recoup against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the Post-Confirmation Debtor may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.  Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Post-Confirmation Debtor of any such claims, equity interests, rights and Causes of Action that the Debtor or Post-Confirmation Debtor may possess against any such Holder, except as specifically provided in the Plan.

G.   PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED
CLAIMS OR INTERESTS

   1.   <u>Resolution of Disputed Claims</u>

      (a)   <u>Prosecution of Claims Objections</u>

   The Debtor and Post-Confirmation Debtor shall have the exclusive authority to File objections on or before the Claims Objection Bar Date and settle, compromise, withdraw or litigate to judgment objections to any and all Claims.   From and after the Effective Date, the Post-Confirmation Debtor may settle, compromise, or withdraw objections to any Disputed Claim without approval of the Bankruptcy Court or notice to any party.

      (b)   <u>Procedure for Omnibus Objections to Claims</u>

   The Debtor or the Post-Confirmation Debtor is permitted to file omnibus objections to claims (an "Omnibus Objection") on any grounds, including, but not limited to, those grounds specified in Bankruptcy Rule 3007(d).   For claims that have been transferred, a notice shall be provided only to the person or persons listed as being the owner of such claim on the Debtor's claims register as of the date the Omnibus Objection is filed.   The notice shall include a copy of the relevant Omnibus Objection but not the exhibits thereto listing all claims subject to the objection thereby; rather, the notice shall (i) identify the particular claim or claims filed by the claimant that are the subject of the Omnibus Objection, (ii) provide a unique, specified, and detailed basis for the objection, (iii) explain the proposed treatment of the claim, (iv) notify such claimant of the steps that must be taken to contest the objection, and (v) otherwise comply with the Bankruptcy Rules.

      (c)   <u>Claims Estimation</u>

   The Debtor or Post-Confirmation Debtor may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law, and (b) any contingent or unliquidated Claim pursuant to applicable law, including Bankruptcy Code §502(c), regardless of whether the Debtor or Post-Confirmation Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.   In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Post-Confirmation Debtor may elect to pursue additional objections to the ultimate distribution on such Claim.   If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Post-Confirmation Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim.   Notwithstanding Bankruptcy Code §502(j), in no event shall any Holder of a Claim that has been estimated pursuant to Bankruptcy Code §502(c) or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 20 days after the date on which such Claim is estimated.   Each of the aforementioned Claims and objection, estimation,

and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

(d)   Deadline to File Objections to Claims

Any objections to Claims, other than Administrative Claims, shall be Filed no later than the Claims Objection Bar Date.

2.   Claims Allowance

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Case allowing such Claim. Except as expressly provided by the Plan or any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), the Post-Confirmation Debtor will have and shall retain after the Effective Date any and all rights and defenses that the Debtor had with respect to any Claim as of the Petition Date.

3.   Controversy Concerning Impairment

If a controversy arises as to whether any Claims or any Class of Claims are Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine any such controversy before the Confirmation Date.

4.   Disallowance of Claims

All Claims of any Entity from which property is sought by the Debtor or the Post-Confirmation Debtor under Bankruptcy Code §§542, 543, 550 or 553, or that the Debtor or Post-Confirmation Debtor alleges is a transferee of a transfer that is avoidable under Bankruptcy Code §§522(f), 522(h), 544, 545, 547, 548, 549 or 724(a), shall be disallowed if such Entity or transferee has failed to turnover such property.

EXCEPT AS OTHERWISE AGREED TO BY THE DEBTOR OR POST-CONFIRMATION DEBTOR, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT ON OR BEFORE THE CONFIRMATION HEARING.

5.   Amendments to Claims

On or after the Effective Date, except as otherwise provided in the Plan, a Claim may not be re-Filed or amended without the prior authorization of the Bankruptcy Court or the Post-Confirmation Debtor, and any such re-Filed or amended Claim shall be deemed disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

-19-

H.    CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE
PLAN

1.    <u>Conditions Precedent to Confirmation</u>

It shall be conditions precedent to Confirmation of the Plan that:

(a)    all provisions, terms, and conditions of the Plan are approved in the
Confirmation Order;

(b)    the Bankruptcy Court has entered an Order approving the Sale;

(c)    the Debtor has executed a contract for the Sale with the Plan Funder which
will enable the Post-Confirmation Debtor to have sufficient Cash to make
the payments on the Effective Date required by the Plan; and

(d)    the proposed Confirmation Order shall be in form and substance
acceptable to the Debtor.

2.    <u>Conditions Precedent to Consummation</u>

It shall be a condition to Consummation of the Plan and occurrence of the Effective Date
that the following conditions shall have been satisfied or waived pursuant to the provisions of the
Plan that:

(a)    the Confirmation Order shall have been entered and become a Final Order
in form and substance acceptable to the Debtor;

(b)    all documents and agreements necessary to implement the Plan shall have
(a) been tendered for delivery, and (b) been executed;

(c)    all actions, documents, certificates and agreements necessary to
implement this Plan shall have been effected or executed and delivered to
the required parties and, to the extent required, Filed with the applicable
governmental units in accordance with applicable laws;

(d)    the Debtor shall have executed and delivered any and all necessary
documents to the Plan Funder sufficient to consummate the Sale;

(e)    the Sale shall have closed with the Plan Funder and the Plan Funder shall
have funded the Plan, which will enable the Post-Confirmation Debtor to
have sufficient Cash to make the payments on the Effective Date required
by the Plan.

3.    <u>Waiver of Conditions</u>

The conditions precedent to Confirmation of the Plan and to Consummation of the Plan
set forth in the Plan may be waived by the Debtor or Post-Confirmation Debtor, on notice to
creditors and the United States Trustee, without further notice, leave or order of the Bankruptcy
Court, or any formal action other than by proceeding to confirm or consummate the Plan.

4.      Effect of Non Occurrence of Conditions to Consummation

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders or any other Entity in any respect.

I.      SETTLEMENT, INJUNCTION, AND RELATED PROVISIONS

1.      Compromise and Settlement

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder takes into account and conforms to the relative priority and rights of the Claims and the Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, Bankruptcy Code §§510(b) and 510(c) or otherwise.  As of the Effective Date, any and all such rights described in the preceding sentence are settled, compromised and released pursuant hereto.  The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtor, her Estate, and all Holders of Claims, (2) fair, equitable and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to Bankruptcy Code §363 and Bankruptcy Rule 9019.

In accordance with the provisions of this Plan, and pursuant to Bankruptcy Code §363 and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Post-Confirmation Debtor may, in her sole and absolute discretion, compromise and settle Claims against the Debtor, and (2) the Post-Confirmation Debtor may, in her respective sole and absolute discretion, compromise and settle Causes of Action against other Entities.

2.      Exculpation

TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE §1125(e), THE DEBTOR AND HER PROFESSIONALS SHALL NEITHER HAVE, NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ACTS BEFORE THE EFFECTIVE DATE TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR EFFECTING THE CONSUMMATION OF THE PLAN, THE DISCLOSURE STATEMENT, OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, OR ANY ACT BEFORE THE EFFECTIVE DATE TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTOR'S ASSETS AND LIABILITIES; PROVIDED, HOWEVER, THAT THE FOREGOING "EXCULPATION" SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM SUCH PERSON'S OR ENTITY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL

RESPECTS, THE DEBTOR SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO HER DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, OR ANY OF THE DEBTOR'S ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTOR'S PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS (OR ANY CRIMINAL LAWS) OF THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT.

3.     Preservation of Rights of Action/Reservation of Rights

(a)     Maintenance of Causes of Action

Except as otherwise provided in the Plan or Confirmation Order, including the exculpation provisions thereof, after the Effective Date, the Post-Confirmation Debtor shall retain all rights to and shall have standing to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including in an adversary proceeding Filed in the Chapter 11 Case.

The Post-Confirmation Debtor may, in her sole discretion, elect not to pursue any Causes of Action that the Post-Confirmation Debtor otherwise has authority to pursue hereunder, the pursuit of which the Post-Confirmation Debtor deems not to be in the best interest of the Estate.

Except as specifically provided in the Plan or Confirmation Order, including the exculpation provisions thereof, nothing contained in the Plan or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor or her Estate had immediately prior to the Petition Date, against or with respect to any Claim whether impaired or left unimpaired by the Plan. Except as specifically provided in the Plan or Confirmation Order, including the exculpation provisions thereof, the Post-Confirmation Debtor shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, or other legal or equitable defenses which Debtor had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all legal and equitable rights of the Debtor respecting any Claim whether impaired or left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.

Except as specifically provided in the Plan or Confirmation Order, including the exculpation provisions thereof, any claims, rights, or Causes of Action that the Debtor may hold against any Entity shall vest in the Post-Confirmation Debtor on the Effective Date and the Post-Confirmation Debtor shall have the exclusive right and authority to institute, prosecute, abandon, settle or compromise any and all such claims, rights and Causes of Action, and the Post-Confirmation Debtor shall not require the consent or approval of any party or any further order of the Bankruptcy Court to settle or resolve any claims, rights and Causes of Action.

(b)    Preservation of All Causes of Action Not Expressly Sold, Settled, or Released

Unless a claim or Cause of Action against a Holder of a Claim or other Entity is expressly waived, abandoned, relinquished, released, compromised, assigned, or settled in the Plan or any Final Order (including the Confirmation Order), including the exculpation provisions thereof, the Debtor expressly reserves such claim or Cause of Action for later action by the Post-Confirmation Debtor (including claims and Causes of Action of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believe to exist) and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such claims or Causes of Action have been expressly released in the Plan, or any other Final Order (including the Confirmation Order), including the exculpation provisions thereof. In addition, the Debtor or the Post-Confirmation Debtor, as the case may be, reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant, or an interested party, against any Entity, including the plaintiffs or co-defendants in such lawsuits except where such claims or Causes of Action have been released in the Plan or any other Final Order (including the Confirmation Order).

4.    Preservation of Insurance.

Nothing in the Plan shall diminish or impair the enforceability of any policies of insurance that may cover claims or causes of action against the Debtor, any other Entity, or any other Person.

5.    Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES AGAINST THE DEBTOR OR PROPERTY OF THE DEBTOR'S ESTATE, INCLUDING BUT NOT LIMITED TO THE UNIT, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE PURCHASER OF THE UNIT, THE UNIT, AND ANY ENTITY ENTITLED TO EXCULPATION UNDER THIS PLAN, ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES OF THE DEBTOR; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE PURCHASER OF THE UNIT, THE UNIT, AND ANY ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES OF THE DEBTOR; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM OR ENCUMBRANCE OF ANY KIND AGAINST THE PURCHASER OF THE UNIT, THE UNIT, AND ANY ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES OF THE DEBTOR; AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST THE PURCHASER OF THE UNIT, THE UNIT, AND ANY ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF

ACTION OR LIABILITIES, UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE CONFIRMATION DATE, AND NOTWITHSTANDING ANY INDICATION IN A PROOF OF CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO BANKRUPTCY CODE §553 OR OTHERWISE; PROVIDED, HOWEVER, THAT THE FOREGOING INJUNCTION SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM SUCH PERSON'S OR ENTITY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE DEBTOR SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO HER DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, OR ANY OF THE DEBTOR'S ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTOR'S PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS (OR ANY CRIMINAL LAWS) OF THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT.

J.      RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, to the extent legally permissible, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Persons and Entities with respect to all matters related to the Chapter 11 Case, the Debtor and the Plan, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim;

2.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.      resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable, and to adjudicate and, if necessary, liquidate, any Claims arising under any Executory Contract or Unexpired Lease;

4.      resolve any issues related to any matters adjudicated in the Chapter 11 Case;

5.      resolve any issues related to any order entered by the Bankruptcy Court in the Chapter 11 Case;

-24-

6.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

7.      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Post-Confirmation Debtor after the Effective Date; provided that the Post-Confirmation Debtor shall reserve the right to commence actions in all appropriate forums and jurisdictions;

8.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, and other agreements or documents adopted in connection with the Plan, the Sale, or the Disclosure Statement;

9.      resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan or the Sale;

10.      issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

11.      enforce the exculpations and injunctions contained in this Plan;

12.      resolve any cases, controversies, suits or disputes with respect to any injunction, exculpation or other provisions contained in this Plan, and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such provisions;

13.      enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14.      resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Sale, or any contract, instrument, release or other agreement or document adopted in connection with the Plan, the Disclosure Statement, or the Sale; and

15.      enter an order and final decree closing the Chapter 11 Case.

K.      MISCELLANEOUS PROVISIONS

1.      <u>Payment of Statutory Fees</u>

All fees and any applicable interest payable pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date of the Plan.  Thereafter, all fees, and any applicable interest, payable pursuant to 28 U.S.C. § 1930 after the Effective Date shall be paid prior to the closing of the Chapter 11 Case when due or as soon thereafter as practicable.

2.    Quarterly Reports

The Post-Confirmation Debtor shall file quarterly reports after the Confirmation Date and provide copies to the U.S. Trustee, and schedule post-confirmation status conferences with the Court which shall be held subject to order of the Court.

3.    Modification of Plan

Effective as of the date of the Plan, and subject to the limitations and rights contained in the Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, Post-Confirmation Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with Bankruptcy Code §1127(b) or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

4.    Revocation of Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against the Debtor or any other Entity, or any Interests; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor, or any other Entity.

5.    Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

6.    Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order becomes a Final Order.  Neither the filing of the Plan, any statement or provision contained in the Plan, nor the taking of any action by the Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the Holders of Claims or Interests or other Entity; or (2) any Holder of a Claim or an Interest or other Entity prior to the Effective Date.

7.    Further Assurances

The Debtor or the Post-Confirmation Debtor, as applicable, all Holders of Claims receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

8.    <u>Severability</u>

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Case, to be invalid, void or unenforceable, the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Case, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, <u>provided</u> <u>that</u> any such alteration or interpretation must be in form and substance acceptable to the Debtor; <u>provided</u> <u>further</u> <u>that</u> the Debtor may seek an expedited hearing before the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Case, to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such order by the Bankruptcy Court, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

9.    <u>Service of Documents</u>

Any pleading, notice or other document required by the Plan to be served on or delivered shall be sent to:

Any pleading, notice or other document required by the Plan to be served on or delivered shall be sent to:

<u>The Debtor</u>
GARVEY TIRELLI & CUSHNER LTD.
50 Main Street, Suite 390
White Plains, New York 10606
Attn:    Todd S. Cushner, Esq.
            todd@thegtcfirm.com

<u>The Plan Funder</u>
c/o SilvermanAcampora LLP
100 Jericho Quadrangle
Suite 300
Jericho, New York 11753
Attn:    Ronald J. Friedman, Esq.
            RFriedman@SALLP.com

<u>Secured Creditors</u>
JPMorgan Chase Bank, NA.
c/o Helfand & Helfand
350 Fifth Avenue, Suite 5330
New York, New York 10118
River House Realty Co., Inc.

TD Bank N.A.
Attn: Bankruptcy Dept.
ME2-002-035

-27-

P.O. Box 9547
Portland, ME 04112-9547

Bank of America
P.O. Box 9001065
Louisville, KY 40290

<u>United States Trustee for Region 2</u>
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, New York 10014
Attn:
         @usdoj.gov

## IV.    <u>SOLICITATION AND VOTING PROCEDURES</u>

### A.    RECORD DATE

The Record Date is _____, 2016, the date on which the Bankruptcy Court entered the Disclosure Statement Order.  The Record Date is the date on which the following will be determined: (a) which Holders of Claims are entitled to vote to accept or reject the Plan and receive the Solicitation Package; and (b) whether Claims have been properly assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of a Claim.

### B.    VOTING DEADLINE

The Voting Deadline is _____, 2016, at 4:00 p.m.  To be counted as votes to accept or reject the Plan, all Ballots must be properly executed, completed and delivered by using the return envelope provided by: (a) first class mail; (b) overnight courier; or (c) personal delivery, so that they are <u>actually received</u> no later than the Voting Deadline by the Voting Agent.  The Ballots will clearly indicate the appropriate return address.  Ballots returnable to the Voting Agent should be sent to: Garvey Tirelli & Cushner Ltd., 50 Main Street, Suite 390, White Plains, New York 10606, Attn: Todd S. Cushner, Esq..

IF A BALLOT IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED.

ANY BALLOT THAT IS PROPERLY EXECUTED BY THE HOLDER OF A CLAIM, BUT THAT DOES NOT CLEARLY INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN OR ANY BALLOT THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN, WILL BE COUNTED AS AN ACCEPTANCE OF THE PLAN.

BY SIGNING AND RETURNING A BALLOT, EACH HOLDER OF A CLAIM WILL CERTIFY TO THE BANKRUPTCY COURT AND THE DEBTOR THAT NO OTHER BALLOTS WITH RESPECT TO SUCH CLAIM HAVE BEEN CAST OR, IF ANY OTHER BALLOTS HAVE BEEN CAST WITH RESPECT TO SUCH CLASS OF CLAIMS, SUCH OTHER BALLOTS INDICATED THE SAME VOTE TO ACCEPT OR REJECT THE PLAN.

IT IS IMPORTANT TO FOLLOW THE SPECIFIC INSTRUCTIONS PROVIDED ON EACH BALLOT, AS APPROPRIATE, WHEN SUBMITTING A VOTE.

-28-

C.    SOLICITATION PROCEDURES

    1.    <u>Solicitation Package</u>

The following documents and materials will constitute the Solicitation Package:

        (a)    the Disclosure Statement Order;

        (b)    an appropriate form of Ballot and instructions with respect thereto, if applicable;

        (c)    the approved form of the Disclosure Statement (together with the Plan, which is Exhibit "A" thereto); and

        (d)    such other materials as the Bankruptcy Court may direct.

    2.    <u>Distribution of the Solicitation Package</u>

The Solicitation Package will be distributed to Holders of Claims in the Voting Class as of the Record Date.

D.    VOTING AND TABULATION PROCEDURES

    1.    <u>Ballot Tabulation</u>

The following voting procedures and standard assumptions will be used in tabulating ballots:

        (a)    a Claim will be deemed temporarily counted for voting purposes in an amount equal to (i) if a timely filed Proof of Claim has not been filed, the undisputed amount of such Claim as set forth in the Schedules filed by the Debtor, or (ii) the amount of such Claim as set forth in a timely filed Proof of Claim;

        (b)    if a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim will be temporarily allowed for voting purposes in the amount so estimated or allowed by the Court;

        (c)    if a Claim is listed in the Schedules as contingent, unliquidated or disputed, such Claim will be disallowed for voting purposes;

        (d)    if the Debtor has filed and served an objection to a Claim at least ten (10) days before the Voting Deadline, such claim will be temporarily allowed or disallowed for voting purposes in accordance with the relief sought in the objection; and

        (e)    if a Holder of a Claim identifies a Claim amount on its Ballot that is less than the amount otherwise calculated in accordance with the Tabulation Rules, the Claim will be temporarily counted for voting purposes in the lesser amount identified on such Ballot.

V.      CONFIRMATION PROCEDURES

A.      CONFIRMATION HEARING

Bankruptcy Code §1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan filed under chapter 11 of the Bankruptcy Code.  Bankruptcy Code §1128(b) provides that any party in interest may object to confirmation of the plan.

1.      Confirmation Hearing Date

The Confirmation Hearing will commence on _____, 2016 at 10:00 a.m. (prevailing E.S.T.), before the Honorable Robert D. Drain, United States Bankruptcy Judge, in the Bankruptcy Court.  The Confirmation Hearing may be continued from time to time without further notice other than an adjournment announced in open court at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.  The Bankruptcy Court, in its discretion and prior to the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing.  The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

2.      Disclosure Statement and Objection Deadline

The Disclosure Statement and Plan Objection Deadline ("Objection Deadline") is _____, 2016 at 4:00 p.m.  All objections to the Disclosure Statement or the Plan must be filed with the Bankruptcy Court and served on the Debtor, and certain other parties in accordance with the Disclosure Statement Order, as approved, on or before the Objection Deadline.  Objections to the Plan or requests for modifications to the Plan, if any, must:

- be in writing;

- conform to the Bankruptcy Rules and the Local Bankruptcy Rules;

- state the name and address of the objecting Entity and the amount and nature of the Claim or Interest of such Entity;

- state with particularity the basis and nature of the objection and, if practicable, a proposed modification to the Plan that would resolve the objection; and

- be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is actually received by the Debtor, and other parties identified in the Disclosure Statement Order on or prior to the Objection Deadline.

The proposed schedule will provide Entities with sufficient notice of the Objection Deadline, which will be at least 28 days, as required by Bankruptcy Rule 2002(b), plus three (3) days for service by first class mail, as required by the Bankruptcy Rule 9006(f).  The Debtor believes that the Objection Deadline will afford the Bankruptcy Court, the Debtor, and other parties in interest reasonable time to consider any objection to final approval of the Disclosure Statement and confirmation of the Plan prior to the Confirmation Hearing.

THE BANKRUPTCY COURT WILL NOT CONSIDER OBJECTIONS TO THE DISCLOSURE STATEMENT OR THE PLAN UNLESS THEY ARE TIMELY-SERVED AND FILED IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER.

<u>Objections must be served on all of the following parties:</u>

<u>The Debtor</u>
**GARVEY TIRELLI & CUSHNER LTD.**
50 Main Street, Suite 390
White Plains, New York 10606
Attn:   Todd S. Cushner, Esq.
          todd@thegtcfirm.com

<u>The Plan Funder</u>
c/o SilvermanAcampora LLP
100 Jericho Quadrangle
Suite 300
Jericho, New York 11753
Attn:   Ronald J. Friedman, Esq.
          RFriedman@SALLP.com

<u>Secured Creditors</u>
JPMorgan Chase Bank, NA.
c/o Helfand & Helfand
350 Fifth Avenue, Suite 5330
New York, New York 10118
River House Realty Co., Inc.

TD Bank N.A.
Attn: Bankruptcy Dept.
ME2-002-035
P.O. Box 9547
Portland, ME 04112-9547

Bank of America
P.O. Box 9001065
Louisville, KY 40290

<u>United States Trustee for Region 2</u>
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, New York 10014
Attn:
          @usdoj.gov

## B.    STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Disclosure Statement satisfies Bankruptcy Code §1125 and whether the Plan satisfies the requirements of Bankruptcy Code §1129.  The Debtor believes that: (1) the Disclosure Statement and the Plan satisfy all of the necessary statutory requirements of chapter 11 of the Bankruptcy Code; (2) the Debtor has complied or will have complied with all of the necessary requirements of chapter 11 of the Bankruptcy Code; and (3) the Plan has been proposed in good faith.  Specifically, in addition

to others, as applicable, the Debtor believes that the Plan satisfies or will satisfy the applicable Confirmation requirements of Bankruptcy Code §1129 as set forth below.

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtor, as the Plan proponent, will have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the case, has been disclosed to the Bankruptcy Court, and any such payment: (1) made before the Confirmation of the Plan is reasonable; or (2) subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation of the Plan.

- Either each Holder of an Impaired Claim has accepted the Plan, or will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated on that date under chapter 7 of the Bankruptcy Code.

- Each Class of Claims that is entitled to vote on the Plan has either accepted the Plan or is not Impaired under the Plan, or the Plan can be confirmed without the approval of such Class pursuant to Bankruptcy Code §1129(b).

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Claims and Other Priority Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of Impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- All fees of the type described in 28 U.S.C. § 1930, including the fees of the United States Trustee, will be paid as of the Effective Date.

1.      Best Interests of Creditors Test/Liquidation Analysis

Pursuant to Bankruptcy Code §1129(a)(7), for a plan to be confirmed, it must provide that holders of claims or equity interests will receive at least as much under a plan as they would receive in a liquidation of the debtor under chapter 7 of the Bankruptcy Code (the "Best Interest Test").  The Best Interest Test with respect to each impaired class requires that each holder of an allowed claim or equity interest of such class either: (i) accepts the plan; or (ii) receives or retains under the plan property of a value, as of the effective date, that is not less than the value such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code.  The Bankruptcy Court will determine whether the value received under the Plan by the Holders of Allowed Claims in each Class or Interests equals or exceeds the value that would be allocated to such Holders if the Debtor's assets were liquidated under chapter 7 of the Bankruptcy Code.

The Plan provides for the liquidation of the Debtor's most valuable asset, the Unit, and the payment to creditors from the Net Sale Proceeds in accordance with the priority scheme imposed by the Bankruptcy Code.  The Debtor believes that the Plan meets the Best Interest Test and provides value which is not less than that which would be recovered by each such Holder in a chapter 7 bankruptcy proceeding or proceedings.  Generally, to determine what Holders of Allowed Claims and Interests in each impaired Class would receive if the Debtor's estate were liquidated, the Bankruptcy Court must determine what funds would be generated from the liquidation of Debtor's assets and properties in the context of a chapter 7 liquidation case for the Debtor, which for unsecured creditors would consist of the proceeds resulting from the disposition of the assets of the Debtor, augmented by the unencumbered Cash held by Debtor at the time of the commencement of the liquidation case.  Such Cash amounts would be reduced by the costs and expenses of the liquidation and the use of chapter 7 for the purpose of liquidation.

In the case of a chapter 7 liquidation, Holders of Allowed Claims would receive distributions based on the liquidation of the assets of the Debtor.  Such assets would include the same assets being collected and liquidated under the Plan – the Unit, Causes of Action, and Cash on hand.  However, the net proceeds from the collection of property of the Estate available for distribution to Creditors would be reduced by any commission payable to the chapter 7 trustee the Estate and the fees for the trustee's attorneys, accountants and other professionals, as well as the administrative costs of the Chapter 11 Estate (such as the compensation for the Retained Professionals).  In a chapter 7 case, a chapter 7 trustee would be entitled to seek a sliding scale commission based upon the funds distributed by such trustee to creditors, even though the Estate will have already completed most of the work required to effectuate an efficient and orderly sale of the Real Property and the Estate will have already incurred many of the expenses associated with generating those funds.  Accordingly, there is a reasonable likelihood that creditors would "pay again" for the funds accumulated by the Estate because a chapter 7 trustee or trustees would be entitled to receive a commission in some amount for all funds distributed from the Estate.

In addition, the Debtor and its professionals expect that if the Chapter 11 Case was converted to a case under chapter 7, the Sale would be delayed, and potential bidders may lose interest in the Unit.  Further, if the Real Property is not sold pursuant to a Plan, the Estate would be liable for transfer taxes, because transfer taxes may only be avoided under Bankruptcy Code §1146 if real property is transferred pursuant to a chapter 11 plan.

The chapter 7 liquidation case would also likely result in delay in the payment to creditors.  Among other things, pursuant to Bankruptcy Rule 3002(c), chapter 7 cases could trigger a new bar date for filing Claims that would be more than ninety (90) days following conversion of the Chapter 11 Case to chapter 7.  Hence, chapter 7 liquidation would not only delay the Sale and distribution, but would also raise the prospect of additional claims that were not asserted in the Chapter 11 Case.

2.    <u>Feasibility</u>

Bankruptcy Code §1129(a)(11) requires the Bankruptcy Court to find, as a condition to confirmation, that confirmation is not likely to be followed by the debtor's liquidation or the need for further financial reorganization, unless that liquidation or reorganization is contemplated by the Plan.  The Plan contemplates that the Plan Fund will be distributed to the creditors of the Debtor pursuant to the terms of the Plan.  Since the Debtor is an individual and does not operate a business, and the Plan calls for the liquidation of her main asset, the Debtor believes that the Plan meets the financial feasibility requirement.  The Debtor believes that, subject to the risk factors described below, sufficient funds will exist to make all payments required by the Plan.

3.    <u>Acceptance by Impaired Classes</u>

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan, accept the plan.  A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; or (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable or contractual rights to which such claim or equity interest entitles the holder of such claim or equity interest.

Bankruptcy Code §1126(c) defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in that class, counting only those claims that actually voted to accept or to reject the plan.  Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance.  For a class of impaired equity interests to accept a plan, Bankruptcy Code §1126(d) requires acceptance by equity interest holders that hold at least two-thirds in amount of the allowed equity interests of such class, counting only those equity interests that actually voted to accept or reject the plan.  Thus, a class of equity interests will have voted to accept the plan only if two-thirds in amount actually voting cast their ballots in favor of acceptance.

Claims and Interests in Classes 1, 2, 3, and 5 are Unimpaired under the Plan, and, as a result, the Holders of such Claims and Interests are deemed to have accepted the Plan and their votes will not be solicited.

Claims in Class 4 are Impaired under the Plan.  This Class will have accepted the Plan if the Plan is accepted by at least two-thirds in amount and a majority in number of the Claims of the Class (other than any Claims of Creditors designated under Bankruptcy Code §1126(e)) that have voted to accept or reject the Plan.

C.    RISK FACTORS

Prior to deciding whether and how to vote on the Plan, each Holder of a Claim should consider carefully all of the information in this Disclosure Statement and should particularly consider the Risk Factors described in Article VII, "Plan-Related Risk Factors and Alternatives to Confirmation and Consummation of the Plan."

D.    CONTACT FOR MORE INFORMATION

Any interested party desiring further information about the Plan should contact counsel to the Debtor, Garvey Tirelli & Cushner Ltd., 50 Main Street, Suite 390, White Plains, New York 10606, Attn: Todd S. Cushner, Esq., Tel: (914) 946-2200

## VI.    PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

THE IMPLEMENTATION OF THE PLAN IS SUBJECT TO A NUMBER OF RISKS, INCLUDING THOSE ENUMERATED BELOW.  PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE IMPAIRED AND

ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT AND OTHER DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE HEREIN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION, OR ALTERNATIVES TO THE PLAN.

A.      GENERAL BANKRUPTCY LAW AND PLAN-RELATED CONSIDERATIONS

1.      Parties in Interest May Object to the Classification of Claims and Interests

Bankruptcy Code §1122 provides that a plan may place a claim or an equity interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtor believes that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor created certain Classes of Claims and Interests, each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims and Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

2.      Failure to Satisfy Vote Requirement

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtor intends to seek, as promptly as practicable thereafter, Confirmation of the Plan. In the event that sufficient votes are not received, the Debtor may seek to accomplish an alternative chapter 11 plan. Additionally, it is possible that other parties in interest will have the right to propose an alternative plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims as those proposed in the Plan.

3.      Debtor May Not Be Able to Secure Confirmation of the Plan or Confirmation May Be Delayed

Bankruptcy Code §1129 sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, a finding by the bankruptcy court that the value of distributions to non-accepting holders of claims and equity interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the Debtor's estate were liquidated under chapter 7 of the Bankruptcy Code.

The Debtor believes that the closing of the Sale will yield funds sufficient to pay claims in full and creditors will vote in favor of the Plan. There can be no assurance, however, that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the solicitation procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determined that the Disclosure Statement, the solicitation procedures and voting results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met.

The Confirmation and Consummation of the Plan also are subject to certain other conditions. No assurance can be given that these conditions will be satisfied.

4. <u>Debtor May Object to the Amount or Classification of a Claim</u>

Except as otherwise provided in the Plan, the Debtor reserves the right to object to the amount or classification of any Claim under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is subject to an objection. Any Holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

5. <u>Risk of Non-Occurrence of the Effective Date</u>

Although the Debtor believes that the Effective Date will occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

6. <u>Risks Affecting Potential Recoveries</u>

While the Debtor believes that the closing of the Sale will provide funds to pay Allowed Claims in full, the Debtor cannot state with full certainty what recovery will be available to Holders of Claims as the Sale has yet to occur. The following unknown factors are only some that make certainty impossible. First, the Debtor cannot know, at this time, how much money will remain alter paying all Allowed Claims which are senior to the Claims of Class 4. Second, the Debtor cannot know with any certainty, at this time, the number or size of Claims in Class 4 that will ultimately be Allowed. Third, the Debtor cannot know with certainty, at this time, whether the Hampton Secured Claims will be entitled to secured status.

B. **RISKS ASSOCIATED WITH FORWARD LOOKING STATEMENTS**

The financial information contained in this Disclosure Statement has not been audited. In preparing this Disclosure Statement, the Debtor, and her professionals, relied on financial data derived from the Debtor's books and records that was available at the time of such preparation. Although the Debtor, and her professionals, have used their reasonable business judgment to ensure the accuracy of the financial information provided in this Disclosure Statement, and while the Debtor, and her professionals, believe that such financial information fairly reflects the financial condition of the Debtor, the Debtor, and her professionals, are unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

C. DISCLOSURE STATEMENT DISCLAIMER

1. <u>Information Contained Herein Is for Soliciting Votes</u>

The information contained in this Disclosure Statement is for purposes of soliciting acceptances of the Plan and may not be relied upon for any other purposes.

2.      This Disclosure Statement Was Not Reviewed or Approved by the Securities and Exchange Commission

This Disclosure Statement was not filed with the Commission under the Securities Act or applicable state securities laws.  Neither the Commission nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement, or the exhibits or the statements contained herein, and any representation to the contrary is unlawful.

3.      This Disclosure Statement May Contain Forward Looking Statements

This Disclosure Statement may contain "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward looking terminology such as "may," "expect," "anticipate," "estimate" or "continue" or the negative thereof or other variations thereon or comparable terminology.  The reader is cautioned that all forward looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward looking statements.  The liquidation analysis, distribution projections and other information contained herein and attached hereto are estimates only, and the timing and amount of actual distributions to Holders of Allowed Claims may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates or recovery projections may or may not turn out to be accurate.

4.      No Legal or Tax Advice Is Provided to You by this Disclosure Statement

This Disclosure Statement is not legal advice to you.  The contents of this Disclosure Statement should not be construed as legal, business, or tax advice.  Each Holder of a Claim or an Interest should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim or Interest.  This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

5.      No Admissions Made

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, the Debtor) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, Holders of Allowed Claims or Interest or any other parties in interest.

6.      Failure to Identify Litigation Claims or Projected Objections

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO CLAIM IS, OR IS NOT, IDENTIFIED IN THIS DISCLOSURE STATEMENT. MOREOVER, THE DEBTOR OR THE POST-CONFIRMATION DEBTOR, AS APPLICABLE, MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE LITIGATION CLAIMS AND PROJECTED OBJECTIONS TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

7.      <u>No Waiver of Right to Object or Right to Recover Transfers and Assets</u>

The vote by a Holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any Claims or rights of the Debtor or the Post-Confirmation Debtor to object to that Holder's Allowed Claim, or recover any preferential, fraudulent or other voidable transfer or assets, regardless of whether any Claims or Causes of Action of the Debtor or her estate are specifically or generally identified herein.

8.      <u>Potential Exists for Inaccuracies, and the Debtor has No Duty to Update</u>

The statements contained in this Disclosure Statement are made by the Debtor as of the date of the Plan, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date.  While the Debtor has used her reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtor nonetheless cannot, and does not, confirm the current accuracy of all statements appearing in this Disclosure Statement.  Further, although the Debtor may subsequently update the information in this Disclosure Statement, the Debtor has no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

D.      ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

As set forth above, if the Plan is not confirmed, the Debtor's Chapter 11 Case could be converted to a liquidation case under chapter 7 of the Bankruptcy Code.  Alternatively, the Debtor, or other parties in interest may seek confirmation of an alternative plan of reorganization under chapter 11 of the Bankruptcy Code.  In chapter 7, a trustee would be appointed to promptly liquidate the assets of the Debtor.

The Debtor believes that in a liquidation under chapter 7, before creditors received any distributions, additional administrative expenses involved in the appointment of a trustee and attorneys, accountants, and other professionals to assist such trustee, along with an increase in expenses associated with an increase in the number of unsecured claims that would be expected, would cause a substantial diminution in the value of the Estate.   The assets available for distribution to creditors and equity holders would be reduced by such additional expenses and by Claims, some of which would be entitled to priority, which would arise by reason of the liquidation. A more thorough discussion of the effects that chapter 7 liquidation would have on the recoveries of Holders of Claims is set forth in Plan.

**VII.      <u>CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN</u>**

THE DEBTOR AND HER PROFESSIONALS ARE NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF CONFIRMATION AND CONSUMMATION OF THE PLAN, WITH RESPECT TO THE DEBTOR, HOLDERS OF CLAIMS OR HOLDERS OF INTERESTS, NOR ARE THEY RENDERING ANY FORM OF LEGAL OPINION OR TAX ADVICE ON SUCH TAX CONSEQUENCES. THE TAX LAWS APPLICABLE TO INDIVIDUALS IN BANKRUPTCY ARE EXTREMELY COMPLEX, AND HOLDERS OF CLAIMS AND HOLDERS OF INTERESTS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING TAX CONSEQUENCES OF THE PLAN, INCLUDING FEDERAL, FOREIGN, STATE, AND LOCAL TAX CONSEQUENCES.

## VIII.     CONCLUSION AND RECOMMENDATION

The Debtor believes that confirmation of the Plan is preferable to the alternatives described above because it provides the greatest distributions and opportunity for distributions to Holders of Claims against the Estate. In addition, any alternative to confirmation of the Plan could result in extensive delays and increased administrative expenses.

Accordingly, the Debtor urges all Holders of Claims entitled to vote on the Plan to vote to accept the Plan and to indicate such acceptance by returning their Ballots so that they are received no later than 4:00 p.m. (prevailing Eastern Time) on _____, 2016.

Dated:  As of July 29, 2016

Respectfully submitted,

*/s/ Victoria Teodorescu*
Victoria Teodorescu