UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

|  |  |
|---|---|
|  | Chapter 11 |
| VICTORIA TEODORESCU, | Case No. 14-23450 (RDD) |
| Debtor. |  |

--------------------------------------------------------X

---

### DEBTOR'S PLAN OF REORGANIZATION
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

TODD S. CUSHNER
GARVEY TIRELLI & CUSHNER LTD.
50 MAIN STREET
SUITE 390
WHITE PLAINS, NY 10606
914-946-2200
FAX : 914-946-1300
EMAIL: TODD@THEGTCFIRM.COM

Dated:  As of July 29, 2016

TABLE OF CONTENTS

Page

ARTICLE I.    RULES OF INTERPRETATION, COMPUTATION OF TIME,
GOVERNING LAW AND DEFINED TERMS ............................................................. 1

    A.    Rules of Interpretation, Computation of Time and Governing Law ......................... 1
    B.    Defined Terms ................................................................................................. 1

ARTICLE II.    ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS .................................... 7

    A.    Administrative Claims ....................................................................................... 7
    B.    Priority Tax Claims ........................................................................................... 7
    C.    Fees Payable to the United States Trustee ........................................................ 7

ARTICLE III.    CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS ......................... 8

    A.    Administrative Claims and Priority Tax Claims .................................................... 8
    B.    Summary ......................................................................................................... 8
    C.    Classification and Treatment of Claims and Interests. ......................................... 8
    D.    Special Provision Governing Unimpaired Claims ....... **Error! Bookmark not defined.**

ARTICLE IV.    ACCEPTANCE OR REJECTION OF THE PLAN ..................................................... 10

    A.    Presumed Acceptance of Plan .......................................................................... 10
    B.    Voting Classes ................................................................................................ 10
    C.    Acceptance by Impaired Classes of Claims ........................................................ 10

ARTICLE V.    MEANS FOR IMPLEMENTATION OF THE PLAN .................................................. 11

    A.    Source of Funds .............................................................................................. 11
    B.    Release of Liens and Claims ............................................................................. 11
    C.    Exemption from Certain Transfer Taxes ............................................................ 11

ARTICLE VI.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ................................................................................................................... 12

    A.    Assumption and Rejection of Executory Contracts and Unexpired
Leases ............................................................................................................ 12
    B.    Claims Based on Rejection of Executory Contracts or Unexpired
Leases ............................................................................................................ 12
    C.    Modifications, Amendments, Restatements or Other Agreements ......................... 12
    D.    Reservation of Rights ...................................................................................... 13

ARTICLE VII.    PROVISIONS GOVERNING DISTRIBUTIONS ...................................................... 13

    A.    Distributions for Allowed Claims ....................................................................... 13
    B.    Distributions on Account of Claims Allowed After the Effective Date
............................................................................................................................. 13

i

| | | |
|---|---|---|
| C. | Delivery and Distributions and Undeliverable or Unclaimed Distributions | 14 |
| D. | Compliance with Tax Requirements/Allocations | 15 |
| E. | Timing and Calculation of Amounts to Be Distributed | 15 |
| F. | Setoffs | 15 |

**ARTICLE VIII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS OR INTERESTS** ... 16

| | | |
|---|---|---|
| A. | Resolution of Disputed Claims | 16 |
| B. | Claims Allowance | 17 |
| C. | Controversy Concerning Impairment | 17 |
| D. | Disallowance of Claims | 17 |
| E. | Amendments to Claims | 18 |

**ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN** ... 18

| | | |
|---|---|---|
| A. | Conditions Precedent to Confirmation | 18 |
| B. | Conditions Precedent to Consummation and Occurrence of Effective Date | 18 |
| C. | Waiver of Conditions | 19 |
| D. | Effect of Non-Occurrence of Conditions to Consummation | 19 |

**ARTICLE X. SETTLEMENT, INJUNCTION AND RELATED PROVISIONS** ... 19

| | | |
|---|---|---|
| A. | Compromise and Settlement | 19 |
| B. | Exculpation | 19 |
| C. | Preservation of Rights of Action / Reservation of Rights | 20 |
| D. | Preservation of Insurance | 21 |
| E. | Injunction | 21 |

**ARTICLE XI. RETENTION OF JURISDICTION** ... 22

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ... 24

| | | |
|---|---|---|
| A. | Payment of Statutory Fees | 24 |
| B. | Quarterly Reports | 24 |
| C. | Modification of Plan | 24 |
| D. | Revocation of Plan | 24 |
| E. | Successors and Assigns | 24 |
| F. | Reservation of Rights | 24 |
| G. | Further Assurances | 25 |
| H. | Severability | 25 |
| I. | Service of Documents | 25 |

---

## DEBTOR'S PLAN OF REORGANIZATION UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE

---

Victoria Teodorescu (the "Debtor"), the above-captioned debtor and debtor in possession, hereby respectfully proposes the following plan of reorganization under chapter 11 of title 11, United States Code (the "Bankruptcy Code").

### ARTICLE I.

### RULES OF INTERPRETATION, COMPUTATION OF TIME,
### GOVERNING LAW AND DEFINED TERMS

A.    Rules of Interpretation, Computation of Time and Governing Law

1.    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof' and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Bankruptcy Code §102 shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

3.    Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease instrument, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

B.    Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "Accrued Professional Compensation" means, at any particular time, all accrued, contingent and/or unpaid fees and expenses (including Allowed Fee Claims) for legal, financial, advisory, accounting, real estate brokerage, and other services and reimbursement of expenses that are awardable and allowable under Bankruptcy Code §§ 328, 330(a) or 331 or otherwise

rendered prior to the Confirmation Date by any Retained Professional in the Chapter 11 Case that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not been previously paid regardless of whether a fee application has been Filed for any such amount. To the extent that the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a Retained Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

2.      "Administrative Claim" means any Claim for costs and expenses of administration of the Estate under Bankruptcy Code §§503(b), 507(b) or 1114(e)(2), including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate; (b) Fee Claims; (c) all fees and charges, and any applicable interest, assessed against the Estate under chapter 123 of Title 28 of the United States Code, 28 U.S.C. §§1911-30; and (d) Claims arising under Bankruptcy Code §503(b)(9).

3.      "Allowed" means with respect to Claims: (a) any Claim proof of which is timely Filed by the applicable Claims Bar Date (or for which Claim under the Bankruptcy Code or Final Order of the Bankruptcy Court a Proof of Claim is or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim Allowed pursuant to the Plan; provided, however, that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to any Claim (i) no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or (ii) regardless of whether such an objection is so interposed, the Claim shall have been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to or action, approval or order of the Bankruptcy Court

4.      "Bankruptcy Code" means title 11, United States Code, as applicable to the Chapter 11 Case.

5.      "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Case and, to the extent of the withdrawal of any reference under 28 U.S.C. §157 and/or the order of the United States District Court for the Southern District of New York.

6.      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the general, local, and chambers rules of the Bankruptcy Court.

7.      "BOA" means Bank of America.

8.      "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined by Bankruptcy Rule 9006(a)).

9.      "Cash" means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and cash equivalents.

10.     "Causes of Action" means: (a) all any and all avoidance, recovery, subordination or other actions or remedies that may be brought or have already been commenced as of the

JSK/1858956.4/065601

Confirmation Date on behalf of the Debtor or her Estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under Bankruptcy Code §§510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, 553(b) and 724(a); and (b) all actions claims, rights, suits, remedies, counterclaims, crossclaims, indemnity claims, contribution claims or defenses that the Debtor or her Estate may have.

11.    "Chapter 11 Case" means the chapter 11 case pending for the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, Case No. 14-23450 (RDD).

12.    "Chase" means JPMorgan Chase Bank

13.    "Claim" means any claim against the Debtor as defined in Bankruptcy Code §101(5).

14.    "Claims Bar Date" means, as applicable, (a) the General Bar Date, (b) the Government Claims Bar Date, (c) the General Administrative Claims Bar Date, or (d) such other period of limitation as may be fixed by an order of the Bankruptcy Court for filing such Claims.

15.    "Claims Objection Bar Date" means, as applicable: (a) 180 days after the Effective Date; or (b) such other period of limitation as may be fixed by an order of the Bankruptcy Court or the relevant parties for objecting to any Claims.

16.    "Class" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to Bankruptcy Code §1122(a).

17.    "Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified in this Plan having been (a) satisfied, or (b) waived pursuant to the terms of this Plan.

18.    "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

19.    "Confirmation Hearing" means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to Bankruptcy Code §1129, as such hearing may be continued from time to time.

20.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code §1129.

21.    "Consummation" means the occurrence of the Effective Date.

22.    "Debtor" means Victoria Teodoresco, in her individual capacity as a debtor and as a debtor in possession in the Chapter 11 Case.

23.    "Disclosure Statement" means the disclosure statement for this Plan, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto.

24.    "Disposable Income" has the meaning set forth in Section 1325(b)(2) of the Bankruptcy Code calculated as of the Confirmation Date.

JSK/1858956.4/065601

25.    "Disputed Claim" means, with respect to any Claim, any Claim that is not yet Allowed.

26.    "Effective Date" means the day that is the first Business Day after the closing of the Sale, provided that: (a) no stay of the Confirmation Order is in effect; and (b) all other conditions specified in the Plan have been satisfied, or waived.

27.    "Entity" means an entity as defined in Bankruptcy Code § 101(15), including Persons.

28.    "Estate" means the estate created for the Debtor in its Chapter 11 Case pursuant to Bankruptcy Code § 541.

29.    "Executory Contract" means a contract to which the Debtor is a party that is subject to assumption or rejection under Bankruptcy Code §§ 365 or 1123.

30.    "Fee Claim" means a Claim under Bankruptcy Code §§ 328, 330(a), 331, 363 or 503 for accrued professional compensation, including claims for compensation by a Retained Professional.

31.    "File" or "Filed" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

32.    "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or otherwise been dismissed with prejudice.

33.    "General Administrative Claim" means any Administrative Claim that is not a Fee Claim.

34.    "General Administrative Claims Bar Date" means (a) 60 days after the Confirmation Date; or (b) such other period of limitation as may be fixed by an order of the Bankruptcy Court or the relevant parties for filing any such Claims.

35.    "General Bar Date" means April 8, 2015, pursuant to the Order of the Bankruptcy Court dated March 2, 2015 (ECF Doc. No. 20).

36.    "General Unsecured Claim" means any unsecured Claim against the Debtor, which is not a Priority Tax Claim, General Administrative Claim, Fee Claim or Other Priority Claim.

37.    "Government Claims Bar Date" means April 13, 2015, pursuant to the Order of the Bankruptcy Court dated March 2, 2015 (ECF Doc. No. 20).

4

38.    "Hampton Secured Claims" means the Allowed secured claims held by BOA, Chase and TD against the Real Property, which amount reflects the reduced amount as agreed to by TD pursuant to a short sale agreement that was approved by the Bankruptcy Court.

39.    "Holder" means an Entity or Person holding a Claim.

40.    "Impaired" means, with respect to a class of claims, a Claim that is impaired within the meaning of Bankruptcy Code § 1124.

41.    "Impaired Class" means an impaired Class within the meaning of Bankruptcy Code § 1124.

42.    "Interests" means all of the Debtor's interests in property of the Estate.

43.    "Net Sale Proceeds" means the gross proceeds from the Sale less all expenses of the sale paid at closing, including any broker's fee for any professional retained pursuant to an order of the Bankruptcy Court.

44.    "Other Priority Claim" means any Claim accorded priority in right of payment under Bankruptcy Code § 507(a), other than a Priority Tax Claim or an Administrative Claim.

45.    "Person" means a person as defined in Bankruptcy Code §101(41).

46.    "Petition Date" means October 14, 2014, the date on which the Debtor commenced the Chapter 11 Case.

47.    "Plan" means this plan of reorganization, as amended, supplemented or modified from time to time, and including all exhibits, which are incorporated herein by reference.

48.    "Plan Funder" means Gary Kravetz, the purchaser of the Real Property under the Sale.

49.    "Plan Fund" means the Net Sale Proceeds, plus the Disposable Income, plus a contribution from the Plan Funder in the amount of $225,000, to be used to satisfy the Debtor's portion of any capital gains tax that might become due upon the sale of the Real Property, Fee Claims, Administrative Claims, and provide a pro rata distribution to General Unsecured Creditors.

50.    "Post-Confirmation Debtor" means the Debtor after the Confirmation Date.

51.    "Priority Tax Claim" means any Claim of a governmental unit of the kind specified in Bankruptcy Code § 507(a)(8).

52.    "Proof of Claim" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

53.    "Pro Rata" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

54.    "Real Property" means the real property known as and located at 7 Buckskill Road, East Hampton, New York.

5

55.    "Record Date" means the close of business on the date the Bankruptcy Court enters an order conditionally approving the Disclosure Statement.

56.    "Retained Professional" means any Entity: (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with Bankruptcy Code §§ 327, 328 and 1103 and to be compensated for services rendered prior to the Effective Date, pursuant to Bankruptcy Code §§ 327, 328, 329, 330, 331 or 363, including without limitation the Debtor's attorneys and accountants; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b)(4).

57.    "Sale" means the sale of the Real Property, pursuant to Bankruptcy Code § 363, which was approved by the Bankruptcy Court by order dated June 20, 2016 (ECF Doc. No. 45), and consummated free and clear of liens and encumbrances pursuant to Bankruptcy Code §363(f), with all liens and encumbrances to attach to the Net Sale Proceeds.

58.    "Scarsdale Property" means the real property known as and located at 39 Penny Lane, Scarsdale, New York.

59.    "Scarsdale Secured Claims" means the Allowed secured claims held by BOA, Chase and TD against the Scarsdale Property.

60.    "Schedules" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtor pursuant to Bankruptcy Code §521, as the same may have been amended, modified or supplemented from time to time.

61.    "TD" means TD Bank.

62.    "Terms and Conditions of Sale" means the terms and conditions of the Sale approved by order of the Bankruptcy Court dated June 20, 2016 (ECF Doc. No. 45).

63.    "Unclaimed Property" means any distribution of Cash, and other property, unclaimed after the Effective Date, or the date upon which a distribution would have been made in respect of the relevant Allowed Claim. Unclaimed Property shall include: (a) checks (and the funds represented thereby) and other property mailed to a Holder of an Allowed Claim and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; (c) checks (and the funds represented thereby) not mailed, or undeliverable in accordance with the Plan; and (d) distributions rejected by a Holder of a Claim

64.    "Unexpired Lease" means a lease to which the Debtor is a party that is subject to assumption or rejection under Bankruptcy Code §§365 or 1123.

65.    "Unimpaired" means, with respect to a Class of Claims, a Claim that is unimpaired within the meaning of Bankruptcy Code §1124.

66.    "Voting Deadline" means the date and time by which all ballots accompanying the Disclosure Statement upon which Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, must be actually received by the Debtor, as established by Order of the Bankruptcy Court.

JSK/1858956.4/065601

# ARTICLE II.

## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

A.    Administrative Claims

    1.    <u>General Administrative Claims</u>

Except as otherwise provided herein and subject to Bankruptcy Code §§328, 330(a) and 331, each Holder of an Allowed General Administrative Claim will be paid the full amount of such Allowed Claim in Cash: (a) on or as soon as reasonably practicable after the Effective Date; (b) if such Claim is Allowed after the Effective Date, on or as soon as practicable after the date such Claim is Allowed; (c) upon such other terms as may be agreed upon by such Holder and the Debtor; or (d) as otherwise ordered by the Bankruptcy Court.

Except as otherwise provided in this Article II.A, unless previously Filed, requests for payment of General Administrative Claims must be Filed and served prior to the General Administrative Claims Bar Date. Holders of General Administrative Claims that do not File and serve such a request by the applicable General Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such General Administrative Claims against the Debtor, her Estate and such General Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the Debtor and the requesting party within 30 days after the General Administrative Claims Bar Date.

    2.    <u>Fee Claims</u>

Retained Professionals, including without limitation other entities asserting a Fee Claim for services rendered before the Confirmation Date, must File and serve on the Debtor, the United States Trustee, the Bank and such other Entities who are designated by the Bankruptcy Rules or any order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than sixty (60) days after the Confirmation Date. Objections to any Fee Claim must be Filed and served on the Debtor, the United States Trustee, and the requesting party in accordance with the notice of the hearing on such Fee Claim.

B.    Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the Debtor and such Holder; <u>provided</u>, <u>however</u>, that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtor, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than five (5) years after the Petition Date, pursuant to Bankruptcy Code §1129(a)(9)(C).

C.    Fees Payable to the United States Trustee

The Debtor shall pay all United States Trustee quarterly fees under 28 U.S.C. §1930(a)(6), plus interest due and payable under 31 U.S.C. §3717, on all disbursements including Plan payments and disbursements in and outside the ordinary course of the Debtor's business, until

JSK/1858956.4/065601

the entry of a Final Order closing the Chapter 11 Case, dismissal of the Chapter 11 Case, or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS

A.      Administrative Claims and Priority Tax Claims

        In accordance with Bankruptcy Code §1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in this Article III.

B.      Summary

        1.      The categories of Claims listed below classify Claims for all purposes, including voting, Confirmation and distributions pursuant hereto and pursuant to Bankruptcy Code §§1122 and 1123(a)(1).  The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.  A Claim or an Interest is in a particular Class only to the extent that any such Claim is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

        2.      Summary of Classification and Treatment of Classified Claims Against and Interests In the Debtor

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Priority (Non-Tax) Claims | Unimpaired | Deemed to Accept |
| 2 | Scarsdale Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Hampton Secured Claims | Unimpaired | Deemed to Accept |
| 4 | General Unsecured Claims | Potentially Impaired | Entitled to Vote |
| 5 | Interests | Unimpaired | Deemed to Accept |

C.      Classification and Treatment of Claims and Interests.

        The classification and treatment of Claims and Interests pursuant to the Plan, is as follows.

                Class 1 - Priority (Non-Tax) Claims

                (i)      Classification: Class 1 consists of all Priority Claims against the Debtor which are not tax claims, including real estate, water, sewer and similar claims with respect to the Real Property.

                (ii)     Treatment: The legal, equitable and contractual rights of the Holders of Allowed Class 1 Claims are unaltered.  Unless otherwise agreed to by Holders of Allowed Class 1 Claims and the Debtor, each Holder of an Allowed Class 1 Claim shall receive, in full and final satisfaction of such Allowed Class 1

JSK/1858956.4/065601

Claim, payment of the Allowed Class 1 Claim in full in Cash on or as soon as reasonably practicable after the Effective Date.

(iii)    Voting: Class 1 is Unimpaired, and Holders of Class 1 Claims are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f).  Therefore, Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan; provided, however, that all Class 1 Claims shall be subject to becoming Allowed Claims under the provisions of the Plan, including Article VIII hereof.

## Class 2 – Scarsdale Secured Claims

(i)    Classification: Class 2 consists of the Scarsdale Secured Claims.  Any portion of the Scarsdale Secured Claims which may be Allowed as an unsecured Claim shall be treated as a Class 4 Claim.

(ii)    Treatment: Upon the Effective Date the Debtor shall surrender the Scarsdale Property to the Holders of the Scarsdale Secured Claims in full satisfaction of the Scarsdale Secured Claims.

(iii)    Voting: Class 2 is Unimpaired, and Holders of Class 2 Claims are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f).  Therefore, Holders of Class 2 Claims are not entitled to vote to accept or reject the Plan; provided, however, that all Class 2 Claims shall be subject to becoming Allowed Claims under the provisions of the Plan, including Article VIII hereof.

## Class 3 – Hampton Secured Claims

(iv)    Classification: Class 3 consists of the Hampton Secured Claims.  Any portion of the Hampton Secured Claims which may be Allowed as an unsecured Claim shall be treated as a Class 4 Claim.

(v)    Treatment: Any Allowed Class 3 Claim shall be paid in full as soon as such Disputed Class 3 Claim shall become Allowed accordance with Bankruptcy Code §1124(1).  Upon a determination of the Allowed amount of the Class 2 Claim by the Bankruptcy Court, or by agreement between such Holder and the Debtor, the Allowed Class 3 Claim shall be paid in full, in Cash.  If the Allowed amount of such Class 3 Claim has been fixed as of the Effective Date, such Allowed Class 3 Claim shall be paid in full, in Cash, on or as soon as reasonably practicable after the Effective Date.  If the Allowed amount of such Class 3 Claim is fixed after the Effective Date, such Allowed Class 3 Claim shall be paid in full, in Cash, within (20) days after becoming an Allowed Claim.

9

      (vi)     Voting: Class 3 is Unimpaired, and the Holder of the Class 3 Claim is conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f). Therefore, the Holder of the Class 3 Claim is not entitled to vote to accept or reject the Plan; provided, however, that the Class 3 Claim shall be subject to becoming an Allowed Claim under the provisions of the Plan, including Article VIII hereof.

## Class 4 - General Unsecured Claims

      (i)     Classification: Class 4 consists of all General Unsecured Claims held against the Debtor.

      (ii)     Treatment: Holders of Allowed General Unsecured Claims will receive, in full and final satisfaction, settlement, and discharge and in exchange for each Allowed General Unsecured Claim, their Pro Rata share of the amounts remaining in the Plan Fund.

      (iii)     Voting: Class 4 is Impaired and, therefore, Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

## Class 5 – Interests of the Debtor in Property of the Estate

      (i)     Classification: Class 5 consists of all of the Debtor's Interests in property of the Estate.

      (ii)     Treatment: The Debtor does not have any non-exempt assets and, therefore, shall retain all of her assets not otherwise administered under the Plan.

      (iii)     Voting: Class 5 is Unimpaired, and the Holder of Class 5 Interests is not entitled to vote to accept or reject the Plan.

**ARTICLE IV.**

**ACCEPTANCE OR REJECTION OF THE PLAN**

A.     Presumed Acceptance of Plan

     Classes 1, 2, 3, and 5 are Unimpaired under the Plan and, therefore, are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f).

B.     Voting Classes

     Class 4 is Impaired under the Plan, and Holders of Class 4 Claims as of the Record Date shall be entitled to vote to accept or reject the Plan.

C.     Acceptance by Impaired Classes of Claims

     Pursuant to Bankruptcy Code §1126(c), and except as otherwise provided in Bankruptcy Code §1126(e), an Impaired Class of Claims entitled to vote to accept or reject the Plan has

JSK/1858956.4/065601

accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    Source of Funds

The payments due under the Plan will be paid from the Plan Fund, which will be funded by the (i) Plan Funder, (ii) Sale of the Real Property, and (iii) Disposable Income.

The Plan Funder:  The Plan Funder has agreed to make a contribution to the Plan in the amount of $225,000.

The Sale of the Real Property:  The Debtor, through Sotheby's International Realty, engaged in an active marketing campaign beginning in or around January 2016 to solicit and negotiate offers for the sale of the Real Property.  Those marketing efforts resulted in the highest and best offer being submitted by the Plan Funder.  On May 12, 2016, the Debtor filed a motion seeking approval of the sale of the Real Property to the Plan Funder, which was approved by order of the Bankruptcy Court dated June 20, 2016.

The Disposable Income:  Pursuant to Section 1115(a) of the Bankruptcy Code, the Debtor is committing all of her disposable income to the Plan.

B.    Release of Liens and Claims

Except as otherwise provided herein or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Sale or the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article VII hereof, all Claims, including, but not limited to, the Class 2 Claim or Class 3 Claim, or other security interests against the property of any Estate, including but not limited to the Real Property and the Scarsdale Property, shall be fully released and discharged.

C.    Exemption from Certain Transfer Taxes

Pursuant to Bankruptcy Code §1146(a), the sale of the Real Property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States.  The appropriate state or local governmental officials or agents are directed to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of the Real Property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to: (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; or (3) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with the sale of the Real Property pursuant to the Plan.

JSK/1858956.4/065601

# ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed assumed in accordance with the provisions of Bankruptcy Code §§ 365 and 1123 of the Bankruptcy Code as of the Effective Date, and there are no cure costs associated with such assumption.  However, any such Executory Contract or Unexpired Lease shall not be deemed assumed on the Effective Date if it:

(a)    has previously been assumed by the Debtor by Final Order of the Bankruptcy Court;

(b)    has been assumed by the Debtor by order of the Bankruptcy Court as of the Effective Date which order becomes a Final Order after the Effective Date;

(c)    is the subject of a motion to assume or reject pending as of the Effective Date; or

(d)    is otherwise assumed pursuant to the terms herein.

B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases

Notwithstanding anything to the contrary provided herein, all Proofs of Claim arising from the rejection (if any) of Executory Contracts or Unexpired Leases must be Filed within the later of: (a) 30 days after the entry of an order of the Bankruptcy Court approving any such rejection; and (b) the first Business Day that is 30 days following the Effective Date.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claim are not timely Filed will be forever barred from assertion against the Debtor, her Estate and property of the Post-Confirmation Debtor, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article X.E

Notwithstanding anything herein to the contrary, nothing in this Plan is intended to extend the deadline by which Proofs of Claim arising from the rejection (if any) of Executory Contracts or Unexpired Leases was required to be previously Filed.

C.    Modifications, Amendments, Restatements or Other Agreements

Unless otherwise provided by the Plan, each rejected Executory Contract or Unexpired Lease shall include all modifications, amendments, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interest.

Amendments, restatements or other modifications to Executory Contracts or Unexpired Leases executed by the Debtor during the pendency of the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claim arising in connection therewith.

JSK/1858956.4/065601

D.      Reservation of Rights

Nothing contained in the Plan or the exhibits to the Plan shall constitute an admission by the Debtor that any such contract or lease is an Executory Contract or Unexpired Lease or that the Debtor or the Post-Confirmation Debtor has any liability thereunder. Additionally, the Debtor and Post-Confirmation Debtor reserve all of their defenses and rights with respect to any rejection damages claims filed by an Entity with respect to an Executory Contract or Unexpired Lease.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.      Distributions for Allowed Claims

Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, and subject to the establishment of a Disputed Claims Reserve, all distributions with respect to Claims that are Allowed Claims as of the Effective Date shall be made by the Post-Confirmation Debtor, or her counsel, as set forth in the Plan. The Post-Confirmation Debtor shall make distributions on the Effective Date or as soon as reasonably practicable thereafter to Holders of Allowed Administrative Claims, Fees of the type described in 28 U.S.C. § 1930(a)(6), including the fees of the United States Trustee, and any applicable interest, Allowed Fee Claims, and all Allowed Claims and Interests in Classes 1, 3 and 4. The Post-Confirmation Debtor, or her counsel, shall make further distributions to Holders of Claims that subsequently become Allowed Claims pursuant to the Plan.

B.      Distributions on Account of Claims Allowed After the Effective Date

1.      Payments and Distributions on Disputed Claims

Notwithstanding any provision herein to the contrary, except as otherwise agreed by the Post-Confirmation Debtor, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of any such disputes by settlement or Final Order. On the first Business Day which is 20 calendar days after the end of the calendar quarter in which a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim will receive such payments and distributions to which that Holder is then entitled under the Plan. In the event Claims require adjudication or other resolution, the Post-Confirmation Debtor reserves the right to, or shall upon an order of the Bankruptcy Court, establish appropriate reserves for potential payment of any such Claims.

2.      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

JSK/1858956.4/065601

C.    Delivery and Distributions and Undeliverable or Unclaimed Distributions

1.    Delivery of Distributions in General

Except as otherwise provided herein, the Post-Confirmation Debtor, or her counsel, shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's books and records as of the date of any such distribution; provided, however, that if such Holder Files a Proof of Claim, the address identified by the Proof of Claim shall be the address for such distribution, and the manner of delivery for such distributions shall be determined at the discretion of the Post-Confirmation Debtor. Nothing herein shall require or be deemed to require the Post-Confirmation Debtor to attempt to locate any Holder of an Allowed Claim. Distributions shall be made in accordance with the provisions of the Plan and may be made in one or more payments or deliveries.

2.    Minimum Distributions

Notwithstanding anything herein to the contrary, and unless the Net Sale Proceeds are sufficient to pay Class 4 Claims in full, the Post-Confirmation Debtor shall not be required to make distributions or payments of less than $25.00, and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar, with half dollars or less being rounded down. Any Holder of an Allowed Claim whose aggregate distribution under this Plan is less than $25.00 shall forfeit, at the option of the Post-Confirmation Debtor, such amount to, and such amount shall vest in, the Post-Confirmation Debtor for distribution in accordance with the terms of the Plan.

In the event that (a) all Allowed Claims, including Administrative Claims, have been paid in full, or (b) only de minimis assets remain in the Post-Confirmation Estate, all undeliverable distributions or Unclaimed Property shall revert to the Post-Confirmation Debtor.

3.    Undeliverable Distributions and Unclaimed Property

Subject to Bankruptcy Rule 9010, and except as otherwise provided herein, distributions to Holders of Allowed Claims shall be made by the Post-Confirmation Debtor, or her counsel, at (a) the address for each Holder of an Allowed Claim as set forth in the Schedules, unless superseded by the address set forth on the Proof of Claim filed by such Holder, or (b) the last known address for such Holder if no proof of Claim is filed, or if the Debtor or the Post-Confirmation Debtor, has been notified in writing of a change of address.

If any distribution is returned as undeliverable, the Post-Confirmation Debtor may, in her sole discretion, make such efforts to determine the current address of the Holder of the Claim with respect to which the distribution was made, but no distributions to any Holder of an Allowed Claim will be made until the Post-Confirmation Debtor has determined the current address of the Holder of such Allowed Claim, at which time the distribution will be made without interest. The Post-Confirmation Debtor shall have the discretion to determine how to make distributions in the most efficient and cost-effective manner.

Amounts in respect of any undeliverable distributions made by the Post-Confirmation Debtor shall be returned to, and held in trust by, the Post-Confirmation Debtor, until the distributions are claimed, or are deemed to be Unclaimed Property upon the expiration of six (6)

JSK/1858956.4/065601

months from the date of the return of the undeliverable distribution. Unclaimed Property shall be utilized by the Post-Confirmation Debtor to make additional distributions in accordance with the provisions of the Plan. After the final distribution is made under the Plan, or after all Allowed Claims (including Allowed Administrative Claims) have been paid in full, with interest, any Unclaimed Property shall revert to the Post-Confirmation Debtor.

D.    Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Post-Confirmation Debtor shall comply with all tax withholding and reporting requirements imposed upon it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.   Notwithstanding any provision in the Plan to the contrary, the Post-Confirmation Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including segregating or reserving a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding or other taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Post-Confirmation Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.   For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

E.    Timing and Calculation of Amounts to Be Distributed

Except as otherwise provided herein, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive, in one or more payments or deliveries, the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.   If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.   Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

F.    Setoffs

The Post-Confirmation Debtor may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Post-Confirmation Debtor may hold against the Holder of any such Allowed Claim.   In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Post-Confirmation Debtor may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Post-Confirmation Debtor may, pursuant to Bankruptcy Code §553 or applicable non-bankruptcy law, setoff or recoup against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the Post-Confirmation Debtor may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.   Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall

15

constitute a waiver or release by the Post-Confirmation Debtor of any such claims, equity interests, rights and Causes of Action that the Debtor or Post-Confirmation Debtor may possess against any such Holder, except as specifically provided herein.

## ARTICLE VIII.

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS OR INTERESTS

A.    Resolution of Disputed Claims

1.    Prosecution of Claims Objections

The Debtor and Post-Confirmation Debtor shall have the exclusive authority to File objections on or before the Claims Objection Bar Date and settle, compromise, withdraw or litigate to judgment objections to any and all Claims.  From and after the Effective Date, the Post-Confirmation Debtor may settle, compromise, or withdraw objections to any Disputed Claim without approval of the Bankruptcy Court or notice to any party.

2.    Procedure for Omnibus Objections to Claims

The Debtor or the Post-Confirmation Debtor is permitted to file omnibus objections to claims (an "Omnibus Objection") on any grounds, including, but not limited to, those grounds specified in Bankruptcy Rule 3007(d).  For claims that have been transferred, a notice shall be provided only to the person or persons listed as being the owner of such claim on the Debtor's claims register as of the date the Omnibus Objection is filed.  The notice shall include a copy of the relevant Omnibus Objection but not the exhibits thereto listing all claims subject to the objection thereby; rather, the notice shall (i) identify the particular claim or claims filed by the claimant that are the subject of the Omnibus Objection, (ii) provide a unique, specified, and detailed basis for the objection, (iii) explain the proposed treatment of the claim, (iv) notify such claimant of the steps that must be taken to contest the objection, and (v) otherwise comply with the Bankruptcy Rules.

3.    Claims Estimation

The Debtor or Post-Confirmation Debtor may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law, and (b) any contingent or unliquidated Claim pursuant to applicable law, including Bankruptcy Code §502(c), regardless of whether the Debtor or Post-Confirmation Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Post-Confirmation Debtor may elect to pursue additional objections to the ultimate distribution on such Claim.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Post-

JSK/1858956.4/065601

Confirmation Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim. Notwithstanding Bankruptcy Code §502(j), in no event shall any Holder of a Claim that has been estimated pursuant to Bankruptcy Code §502(c) or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 20 days after the date on which such Claim is estimated. Each of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

      4.    <u>Deadline to File Objections to Claims</u>

Any objections to Claims, other than Administrative Claims, shall be Filed no later than the Claims Objection Bar Date.

B.    Claims Allowance

Except as expressly provided herein or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Case allowing such Claim. Except as expressly provided by the Plan or any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), the Post-Confirmation Debtor will have and shall retain after the Effective Date any and all rights and defenses that the Debtor had with respect to any Claim as of the Petition Date.

C.    Controversy Concerning Impairment

If a controversy arises as to whether any Claims or any Class of Claims are Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine any such controversy before the Confirmation Date.

D.    Disallowance of Claims

All Claims of any Entity from which property is sought by the Debtor or the Post-Confirmation Debtor under Bankruptcy Code §§542, 543, 550 or 553, or that the Debtor or Post-Confirmation Debtor alleges is a transferee of a transfer that is avoidable under Bankruptcy Code §§522(f), 522(h), 544, 545, 547, 548, 549 or 724(a), shall be disallowed if such Entity or transferee has failed to turnover such property.

EXCEPT AS OTHERWISE AGREED TO BY THE DEBTOR OR POST-CONFIRMATION DEBTOR, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT ON OR BEFORE THE CONFIRMATION HEARING.

JSK/1858956.4/065601

E.      Amendments to Claims

On or after the Effective Date, except as otherwise provided herein, a Claim may not be re-Filed or amended without the prior authorization of the Bankruptcy Court or the Post-Confirmation Debtor, and any such re-Filed or amended Claim shall be deemed disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE IX.

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.      Conditions Precedent to Confirmation

It shall be conditions precedent to Confirmation of the Plan that:

1.      all provisions, terms, and conditions of the Plan are approved in the Confirmation Order;

2.      the Bankruptcy Court has entered an Order approving the Sale;

3.      the Debtor has executed a contract for the Sale with the Plan Funder which will enable the Post-Confirmation Debtor to have sufficient Cash to make the payments on the Effective Date required by the Plan; and

4.      the proposed Confirmation Order shall be in form and substance acceptable to the Debtor.

B.      Conditions Precedent to Consummation and Occurrence of Effective Date

It shall be a condition to Consummation of the Plan and occurrence of the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX hereof:

1.      the Confirmation Order shall have been entered and become a Final Order in form and substance acceptable to the Debtor;

2.      all documents and agreements necessary to implement the Plan shall have (a) been tendered for delivery, and (b) been executed;

3.      all actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws;

4.      the Debtor shall have executed and delivered any and all necessary documents to the Plan Funder sufficient to consummate the Sale; and

5.      the Sale shall have closed with the Plan Funder and the Plan Funder shall have funded the Plan, which will enable the Post-Confirmation Debtor to have sufficient Cash to make the payments on the Effective Date required by the Plan.

JSK/1858956.4/065601

C.      Waiver of Conditions

The conditions precedent to Confirmation of the Plan and to Consummation of the Plan set forth in this Article IX may be waived by the Debtor or Post-Confirmation Debtor, on notice to counsel to the Co-op, counsel to the Bank, and the United States Trustee, without further notice, leave or order of the Bankruptcy Court, or any formal action other than by proceeding to confirm or consummate the Plan.

D.      Effect of Non-Occurrence of Conditions to Consummation

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders or any other Entity in any respect.

## ARTICLE X.

## SETTLEMENT, INJUNCTION AND RELATED PROVISIONS

A.      Compromise and Settlement

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder takes into account and conforms to the relative priority and rights of the Claims and the Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, Bankruptcy Code §§510(b) and 510(c) or otherwise.  As of the Effective Date, any and all such rights described in the preceding sentence are settled, compromised and released pursuant hereto.   The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtor, her Estate, and all Holders of Claims, (2) fair, equitable and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to Bankruptcy Code §363 and Bankruptcy Rule 9019.

In accordance with the provisions of this Plan, and pursuant to Bankruptcy Code §363 and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Post-Confirmation Debtor may, in her sole and absolute discretion, compromise and settle Claims against the Debtor, and (2) the Post-Confirmation Debtor may, in her respective sole and absolute discretion, compromise and settle Causes of Action against other Entities.

B.      Exculpation

TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE §1125(e), THE DEBTOR AND HER PROFESSIONALS SHALL NEITHER HAVE, NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ACTS BEFORE THE EFFECTIVE DATE TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR EFFECTING THE CONSUMMATION OF THE PLAN, THE DISCLOSURE STATEMENT, OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT

CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, OR ANY ACT BEFORE THE EFFECTIVE DATE TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTOR'S ASSETS AND LIABILITIES; PROVIDED, HOWEVER, THAT THE FOREGOING "EXCULPATION" SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM SUCH PERSON'S OR ENTITY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE DEBTOR SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO HER DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, OR ANY OF THE DEBTOR'S ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTOR'S PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS (OR ANY CRIMINAL LAWS) OF THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT.

C.    Preservation of Rights of Action / Reservation of Rights

1.    <u>Maintenance of Causes of Action</u>

Except as otherwise provided in the Plan or Confirmation Order, including the exculpation provisions thereof, after the Effective Date, the Post-Confirmation Debtor shall retain all rights to and shall have standing to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including in an adversary proceeding Filed in the Chapter 11 Case.

The Post-Confirmation Debtor may, in her sole discretion, elect not to pursue any Causes of Action that the Post-Confirmation Debtor otherwise has authority to pursue hereunder, the pursuit of which the Post-Confirmation Debtor deems not to be in the best interest of the Estate.

Except as specifically provided in the Plan or Confirmation Order, including the exculpation provisions thereof, nothing contained herein or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtor or her Estate had immediately prior to the Petition Date, against or with respect to any Claim whether impaired or left unimpaired by the Plan.  Except as specifically provided in the Plan or Confirmation Order, including the exculpation provisions thereof, the Post-Confirmation Debtor shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, or other legal or equitable defenses which Debtor had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all legal and equitable rights of the Debtor respecting any Claim whether impaired or left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.

JSK/1858956.4/065601

Except as specifically provided in the Plan or Confirmation Order, including the exculpation provisions thereof, any claims, rights, or Causes of Action that the Debtor may hold against any Entity shall vest in the Post-Confirmation Debtor on the Effective Date and the Post-Confirmation Debtor shall have the exclusive right and authority to institute, prosecute, abandon, settle or compromise any and all such claims, rights and Causes of Action, and the Post-Confirmation Debtor shall not require the consent or approval of any party or any further order of the Bankruptcy Court to settle or resolve any claims, rights and Causes of Action.

2.    <u>Preservation of All Causes of Action Not Expressly Sold, Settled or Released</u>

Unless a claim or Cause of Action against a Holder of a Claim or other Entity is expressly waived, abandoned, relinquished, released, compromised, assigned, or settled in the Plan or any Final Order (including the Confirmation Order), including the exculpation provisions thereof, the Debtor expressly reserves such claim or Cause of Action for later action by the Post-Confirmation Debtor (including claims and Causes of Action of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believe to exist) and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such claims or Causes of Action have been expressly released in the Plan, or any other Final Order (including the Confirmation Order), including the exculpation provisions thereof. In addition, the Debtor or the Post-Confirmation Debtor, as the case may be, reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant, or an interested party, against any Entity, including the plaintiffs or co-defendants in such lawsuits except where such claims or Causes of Action have been released in the Plan or any other Final Order (including the Confirmation Order).

D.    Preservation of Insurance

Nothing in the Plan shall diminish or impair the enforceability of any policies of insurance that may cover claims or causes of action against the Debtor, any other Entity, or any other Person.

E.    Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES AGAINST THE DEBTOR OR PROPERTY OF THE DEBTOR'S ESTATE, INCLUDING BUT NOT LIMITED TO THE REAL PROPERTY, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE PURCHASER OF THE REAL PROPERTY, THE REAL PROPERTY, AND ANY ENTITY ENTITLED TO EXCULPATION UNDER THIS PLAN, ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES OF THE DEBTOR; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE PURCHASER OF THE REAL PROPERTY, THE REAL PROPERTY, AND ANY ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY CLAIMS, INTERESTS, CAUSES OF ACTION OR

21

LIABILITIES OF THE DEBTOR; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM OR ENCUMBRANCE OF ANY KIND AGAINST THE PURCHASER OF THE REAL PROPERTY, THE REAL PROPERTY, AND ANY ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES OF THE DEBTOR; AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST THE PURCHASER OF THE REAL PROPERTY, THE REAL PROPERTY, AND ANY ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES, UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE CONFIRMATION DATE, AND NOTWITHSTANDING ANY INDICATION IN A PROOF OF CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO BANKRUPTCY CODE §553 OR OTHERWISE; PROVIDED, HOWEVER, THAT THE FOREGOING INJUNCTION SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM SUCH PERSON'S OR ENTITY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE DEBTOR SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO HER DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, OR ANY OF THE DEBTOR'S ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTOR'S PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS (OR ANY CRIMINAL LAWS) OF THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT.

## ARTICLE XI.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, to the extent legally permissible, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Persons and Entities with respect to all matters related to the Chapter 11 Case, the Debtor and the Plan, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim;

JSK/1858956.4/065601

2.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.      resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable, and to adjudicate and, if necessary, liquidate, any Claims arising under any Executory Contract or Unexpired Lease;

4.      resolve any issues related to any matters adjudicated in the Chapter 11 Case;

5.      resolve any issues related to any order entered by the Bankruptcy Court in the Chapter 11 Case;

6.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

7.      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Post-Confirmation Debtor after the Effective Date; provided that the Post-Confirmation Debtor shall reserve the right to commence actions in all appropriate forums and jurisdictions;

8.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, and other agreements or documents adopted in connection with the Plan, the Sale, or the Disclosure Statement;

9.      resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan or the Sale;

10.      issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

11.      enforce the exculpations and injunctions contained in this Plan;

12.      resolve any cases, controversies, suits or disputes with respect to any injunction, exculpation or other provisions contained in this Plan, and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such provisions;

13.      enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14.      resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Sale, or any contract, instrument, release or other agreement or document adopted in connection with the Plan, the Disclosure Statement, or the Sale; and

15.      enter an order and final decree closing the Chapter 11 Case.

23

# ARTICLE XII.

## MISCELLANEOUS PROVISIONS

A.    Payment of Statutory Fees

All fees and any applicable interest payable pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date of the Plan.  Thereafter, all fees, and any applicable interest, payable pursuant to 28 U.S.C. § 1930 after the Effective Date shall be paid prior to the closing of the Chapter 11 Case when due or as soon thereafter as practicable.

B.    Quarterly Reports

The Post-Confirmation Debtor shall file quarterly reports after the Confirmation Date and provide copies to the U.S. Trustee, and schedule post-confirmation status conferences with the Court which shall be held subject to order of the Court.

C.    Modification of Plan

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, Post-Confirmation Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with Bankruptcy Code §1127(b) or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

D.    Revocation of Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against the Debtor or any other Entity, or any Interests; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor, or any other Entity.

E.    Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

F.    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order becomes a Final Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking

JSK/1858956.4/065601

of any action by the Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the Holders of Claims or Interests or other Entity; or (2) any Holder of a Claim or an Interest or other Entity prior to the Effective Date.

G.    Further Assurances

The Debtor or the Post-Confirmation Debtor, as applicable, all Holders of Claims receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

H.    Severability

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Case, to be invalid, void or unenforceable, the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Case, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, provided that any such alteration or interpretation must be in form and substance acceptable to the Debtor; provided further that the Debtor may seek an expedited hearing before the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Case, to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such order by the Bankruptcy Court, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

I.    Service of Documents

Any pleading, notice or other document required by the Plan to be served on or delivered shall be sent to:

The Debtor
**GARVEY TIRELLI & CUSHNER LTD.**
50 Main Street, Suite 390
White Plains, New York 10606
Attn:    Todd S. Cushner, Esq.
         todd@thegtcfirm.com

The Plan Funder
c/o SilvermanAcampora LLP
100 Jericho Quadrangle
Suite 300
Jericho, New York 11753
Attn:    Ronald J. Friedman, Esq.
         RFriedman@SALLP.com

JSK/1858956.4/065601

<u>Secured Creditors</u>
JPMorgan Chase Bank, NA.
c/o Helfand & Helfand
350 Fifth Avenue, Suite 5330
New York, New York 10118
River House Realty Co., Inc.

TD Bank N.A.
Attn: Bankruptcy Dept.
ME2-002-035
P.O. Box 9547
Portland, ME 04112-9547

Bank of America
P.O. Box 9001065
Louisville, KY 40290

<u>United States Trustee for Region 2</u>
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, New York 10014
Attn:
        @usdoj.gov

Dated:  As of July 29, 2016

Respectfully submitted,

 */s/ Victoria Teodorescu*
 Victoria Teodorescu

JSK/1858956.4/065601